# CASES

## IN THE

# SUPREME JUDICIAL COURT

### FOR

## THE COUNTY OF CUMBERLAND, MAY TERM, 1831.

---

## POTTER, *Judge, &c. vs.* TITCOMB.

In an action on a Probate bond, it is sufficient if the writ be indorsed with the names of the persons for whose benefit it is brought, without mentioning the characters in which they claim.

In order to compel an administrator, on his official bond, to pay the amount of a debt due from him to the intestate, it is necessary that he should first be charged with the amount, in an administration account, by a decree of the Judge of Probate.

In an action on an administrator's bond, to compel him to account for and pay over the amount of a private debt due from him to the intestate, the lapse of more than twenty years since the date of the bond affords no ground for the presumption of payment to the heirs; because such payment, *without* a previous decree of distribution, would be a violation of his duty, which the law will not presume. Neither does the presumption arise that the debt was forgiven by the intestate; for gifts, as well as wrongs, are not to be presumed.

The presumption of payment, arising from lapse of twenty years, does not seem applicable except in cases of bonds or other contracts for the payment of money, &c. or the performance of a specific duty, at a fixed time, from which the term of twenty years might commence.

Potter *v* Titcomb.

In an action on an administrator's bond, brought for the benefit of the heirs at law here, it was held to be no good objection, in arrest of judgment, that the intestate was a foreigner, having a foreign domicil at the time of his death, and that the administrator here was therefore accountable to the administrator abroad for the assets, if any, in his hands.

An official bond, being given for official good conduct, is not discharged by a faithful accounting for monies to the amount of the penalty ; but stands good as a security for losses and defalcations to that amount.

In debt on an administrator's bond, the defendant pleaded in bar that he had paid to the heirs and creditors of the intestate divers sums which had been allowed by the Judge of Probate, amounting to more than the penalty of the bond. The plaintiff replied that the defendant was indebted to the intestate in certain promissory notes, of which he had never rendered any account ; but without any averment that he had been cited for that purpose. And on demurrer it was held that the replication was bad, for the omission of such averment ; that the plea would have been bad if demurred to ; that the defect of the plea was cured by the fault of the replication ; and that a citation to account being an essential pre-requisite to the right to maintain the action, and it judicially appearing that the defendant had never been cited, though several issues of fact had been found against him he was entitled to judgment *non obstante veredicto*.

Leave to replead may be granted after argument upon demurrer.

THIS was an action of debt brought by the Judge of Probate, on an official bond given to his predecessor *Nov.* 28, 1804, by *Joseph Titcomb*, in the penal sum of ten thousand dollars, conditioned for his faithful administration of the estate of *Moses Titcomb* deceased, described as late of the island of *St. Croix*. The condition was in the language of the form prescribed in the statute, except that the words " *or judges*" were omitted. The writ was indorsed with the names of divers persons " for whose benefit this action was brought," without mentioning whether they were heirs, creditors or legatees.

The object of the suit was to compel the defendant to render an account of, and to charge him as administrator with the amount of two promissory notes given by the defendant to the intestate ; one dated *Aug.* 26, 1799, for $454, payable in two years ; and the other dated *Aug.* 10, 1804, for $4450 payable in three years, both bearing interest.

The defendant, after *oyer*, pleaded *first*, *non est factum*, on which issue was joined :—*secondly*, a general performance of the condition :—*thirdly*, *nil debet*, on which issue was joined ;—*fourthly*,

that he had paid to the heirs and creditors of the estate the sum of $1211,26 which was settled and allowed by a decree of the Judge of Probate *Nov.* 13, 1805; and the further sum of $431,18, which was also allowed *Dec.* 24, 1806; and the further sum of $9210,77 which was stated in account and assented to by the heirs in writing *Jan.* 9, 1807, but not finally acted upon till *Nov.* 1825 : *fifthly*, payment of the whole penal sum to Judge *Freeman,* the original obligee, *Nov.* 28, 1808.

To the *second* plea the plaintiff replied that the defendant was indebted to the intestate by the promissory notes above mentioned, setting them forth, of which he had never rendered any account, either to the Judge of Probate, or in any other manner. And the defendant rejoined that he was not so indebted ; on which issue was taken to the country.

To 'the *fourth* plea the plaintiff replied in the same manner as to the second, protesting that the defendant never paid the sums mentioned in this plea. And the defendant, protesting that he was not so indebted, rejoined that it was the declared intent of the intestate in his life time, and up to the time of his decease, that whatever monies might be apparently due to him from his brothers and sisters, (the defendant being his brother,) should not be inventoried or brought into any administration account, but should be deemed to be, and by him were on the day of his decease, which was *Sept.* 1, 1804, in consideration of love and affection, freely remitted and forgiven ;—Wherefore, with the concurrence and assent of the heirs, such debts, and particularly the notes mentioned in the replication, were not inventoried nor brought into the administration accounts. To this the plaintiff surrejoined; denying that such was the intent of the intestate ; denying also the assent of the heirs to the omission to render an inventory of the notes; alleging that the defendant fraudulently concealed and kept back the notes, and neglected to render any account of them ; and traversing the remission of the debt by the intestate, as alleged in the rejoinder. Whereupon the defendant demurred, assigning for causes of demurrer, that the plaintiff had not confessed nor avoided the rejoinder,—that he had attempted to put in issue all the facts of the re-

joinder, instead of taking by *protestando* all which he had not traversed,—that he had also attempted to make a denial of facts in the rejoinder, a matter of inducement to his traverse;—that his surrejoinder was double, in denying both the intent of the testator and the assent of the heirs—that it contained new matter, not stated in his fourth replication, and so was a departure,—that it denied matters not traversable,—and that the plaintiff attempted insidiously to charge the defendant with fraud, in order to drive him either to admit the fraud, or to commit a departure by denying it.

To the fifth plea the plaintiff replied that the defendant was indebted by the notes, as stated in his replication to the second plea, setting them forth ; alleging that at the time of granting administration the defendant did not exhibit the notes, nor give any account of them to the Judge of Probate ; but kept them back, and wilfully and fraudulently concealed and suppressed them ; and that the defendant never paid any monies in his office of administrator, except the sums mentioned in his fourth plea ; and traversed the payment of the penalty to the Judge of Probate as alleged in the fifth plea ; on which issue was tendered to the country and joined.

At the trial, before the Chief Justice, the defence, upon the issues of *nil debet* and payment, was placed upon two grounds ;—first, that the intestate never intended that the notes should be paid or called for in the event of his decease, but that they were to be forgiven ;—and secondly, that they had been paid.    No direct proof was adduced in support of either of these positions ; but they were maintained by inferences drawn from the mutual relations between the parties in interest and the intestate, and the course of transactions and equitable circumstances existing among them, as exhibited in the evidence and in their correspondence shown to the jury ; and also from the lapse of more than twenty two years since the notes became due.    On the other side it was contended that as no person was authorized to receive payment, except the defendant himself as administrator of the promissee, this was not a case in which the presumption of payment, arising from lapse of time, could be raised ; but that if it were, the presumption was necessarily that of payment to himself as administrator, in which case he should have

charged himself with the amount, in his account. It was proved, that when the larger note was signed, the defendant was requested by the agent of the intestate to deposit it with *Henry Titcomb,* another brother of the deceased, who died about twenty months previous to the trial; among whose papers, soon after his decease, the note was found, together with a mortgage to secure its payment, and a power of attorney, from the widow of the intestate.

On the whole evidence the chief justice instructed the jury that if the notes had come into the possession of the defendant on his appointment as administrator, it would have been his duty to have charged himself with the amount in his administration account, as soon as they became due; and that if he knew where they were, he should have obtained possession of them as soon as he could, and then have so charged himself with the amount. The evidence relied on to prove that the defendant must have known where the notes were, the chief justice left to the jury, instructing them that if they should be satisfied that he did not know where the notes might probably have been found, so that he could cancel them, then they would not impute any fault in him; but would give effect to the legal presumption of payment, as in other cases; otherwise not.

Much testimony was introduced, both to support and to repel the presumptions raised by the defendant; including a voluminous correspondence between him and the intestate. Among these letters one was offered bearing date *Aug.* 3, 1792, which the chief justice excluded as irrelevant. And he admitted one offered by the plaintiff, addressed by the intestate to his brother *Andrew,* dated *Aug.* 31, 1800, though objected to, the defendant having previously read one from the intestate to *Andrew,* on the same subject, dated *Aug.* 27, 1779.

The defendant objected that the action could not be maintained without proof that he had been cited by the Judge of Probate to render an account of the notes and to charge himself with them; which had never been done; but the chief justice ruled that this objection could not be taken under either of the issues then on trial. The insufficiency of the indorsement of the writ was also urged in

abatement, the objection having been taken at the first term ; but this also was overruled.

The jury returned a verdict for the plaintiff upon all the issues of fact ; which was taken subject to the opinion of the court upon the correctness of the decisions and instructions of the chief justice's given at the trial.

The defendant moved in arrest of judgment, because upon the record it appeared that the intestate, at the time of his decease, was a foreigner, and had his domicil in a foreign country ; and that this suit was brought for the benefit of certain of his heirs in this country ; whereas the defendant, if accountable at all, is accountable only to the ordinary of the place of his domicil. He also moved for judgment *non obstante veredicto*, because it appeared of record that he had already accounted for and paid over a greater sum of money than the whole penalty of the bond.

*N. Emery, Longfellow, Greenleaf,* and *Daveis,* were of counsel with the defendant ; and supported the following positions.

1. The bond itself is not in the form prescribed in the statute, as in terms it binds the administrator to execute the decrees of the then existing Judge of Probate, without appeal ; by the omission of the words " or judges," which, in their collocation, are material. Neither does it appear to have been approved by the judge ; which the law requires. Being therefore a bond at common law, the writ should have been indorsed by the plaintiff himself, under the general statute. But if not, yet the indorsement, by the evident meaning of the statute regulating probate proceedings, should have stated in what character the plaintiffs in interest appear, whether as heirs, creditors, or legatees. *Coffin v. Jones,* 5 *Pick.* 61 ; *White v. Quarles,* 14 *Mass.* 451.

2. It appearing, on the face of the bond, that the intestate, at the time of his decease, had his domicil in a foreign country, the heirs here cannot sustain this action ; but the administrator is accountable only to the ordinary of the place of his domicil. If he is obliged to pay to the heirs here, he is still liable to pay the notes to the administrator there ; without the means of recalling the money from their hands for his reimbursement. *Dawes v. Boylston,* 9 *Mass.*

337 ; Selectmen of Boston v. Boylston, 4 Mass. 318 ; 2 Mass.
384 ; Stevens v. Gaylord, 11 Mass. 256 ; Ritchards v. Dutch, 8
Mass. 506 ; Dawes v. Head, 3 Pick. 128.

3. The defendant was not liable on the bond, without a previous
decree of the Judge of Probate charging him with the debt. It is
only in regard to debts admitted to be due, and uncontroverted, that
the rule applies by which a debtor, being appointed administrator on
his creditor's estate, is thereby instantly chargeable, as administra-
tor, for so much money actually received to the use of the estate.
If the debt is merely a disputed claim, totally denied and resisted
by the administrator, he cannot be liable on the bond, till the ques-
tion of indebtedness has at least been settled by a decree of the
Judge of Probate. Otherwise sureties might be ruined by the neg-
lect of the heirs to cite the administrator to account, he honestly
believing that he owed nothing. 11 Mass. 269.

4. The defendant was not bound to charge himself with the notes
till they came into his possession. It was not enough even if he
knew where they were. He could not know that they were not
negociated by the intestate to another person. Being in the hands
of one of the heirs, if he would charge the administrator with them
he should first have delivered them up.

5. The estate having been accounted for, to a greater amount
than the penalty, the bond is *functus officio* ; the administrator be-
ing alone chargeable for the surplus, in another form of action.
The bond is for the payment of money ; and it operated on a par-
ticular fund then existing, in specie, in the hands of the administra-
tor. The sureties stipulate only that he shall account for so much
property. They would be responsible for him in no deeper trust.
It was not like an official bond for good conduct, in an office in
which the incumbent might or might not receive monies, to an
amount perpetually uncertain ; but on the contrary it was a measu-
red stipulation ; which the heirs or the Judge of Probate might at
any time have increased by requiring a new and further bond. Yet
being an official bond, no interest is to be computed upon the pen-
alty. To this point they referred to the authorities cited in *Potter
v. Webb*, 6 Greenl. 14.

6. The lapse of twenty years has raised a legal presumption against the indebtedness of the defendant, operating as a peremptory bar to the action. 15 *Viner's Abr.* 52; *Stark. Ev.* 1090; 2 *Wash. C. C. Rep.* 323; 5 *Pick.* 20; 6 *Wheat.* 504. If he was ever chargeable for the notes upon his bond, his liability commenced with the execution of the bond; *Stevens v. Gaylord*, 11 *Mass.* 256; *Winship v. Bass*, 12 *Mass.* 199; *Hayes v. Jackson*, 6 *Mass.* 149 :—and therefore from that moment the common law presumption takes its date. Even the mortgage, given as collateral security, is no longer evidence of a subsisting debt. *Giles v. Barrymore*, 5 *Johns. Ch.* 545. The Judge of Probate being but a mere trustee of the bond, for the benefit of heirs and creditors, payment to the *cestui que trust* is a good payment, without the formality of a regular decree for that purpose. *Thomas v. White*, 12 *Mass.* 369 ; *Dearborn v. Parks*, 5 *Greenl.* 81; 4 *Bac. Abr.* 279, *tit. Release D.*; 5 *Dane's Abr. ch.* 144, *art.* 8, *sec.* 5; *Hanson v. Parker*, 1 *Wils.* 257; *Ward v. Lewis*, 4 *Pick.* 522. And if the presumption of a discharge by the *cestui que trust* is not impossible, his long acquiescence ought to avail to that end, even without other evidence to support it. 1 *Mad. Chan.* 75, 105, 453, 455; *Eden on Injunctions, p.* 10; 1 *Swanst.* 137; *Jennison v. Hapgood*, 7 *Pick.* 1; *Quarles v. Quarles*, 4 *Mass.* 680; *Crane v. March*, 4 *Pick.* 131; *Dawes v. Boylston*, 9 *Mass.* 137.

7. In support of the demurrer, they cited 5 *Com. Dig.* 439, *tit. Pleader G.* 2; 1 *Lev.* 77; *Cro. Eliz.* 671, 755; *Cro. Jac.* 86 ; *Cro. Car.* 366; 5 *Bac. Abr.* 328, 445, 451; *Hob.* 316, 321 ; *Yelv.* 225; *Cooper v. Homan*, 3 *Johns.* 315; 1 *Chitty's Pl.* 533, 553; *Plowd.* 140; 6 *Pick.* 269; 3 *Lev.* 467; *Co. Litt.* 77, *b* ; 1 *Roll. Abr.* 45; *Dyer* 31, *b* ; 1 *Stra.* 493. And they insisted that this action could not be maintained, until the defendant, had first been cited to render an account. *Boston v. Boylston*, 4 *Mass.* 318; 9 *Mass.* 397; 7 *Pick.* 1; *Dawes v. Head*, 3 *Pick.* 128.

*Fessenden, Shepley* and *Deblois*, argued for the plaintiff, citing the following authorities. In support of the indorsement of the writ ; *Robbins v. Hayward*, 16 *Mass.* 527; *Potter v. Mayo*, 2 *Greenl.* 241. That presumption of payment arises only where some one in

being had a right of action, or had authority to receive the money ; *3 Stark. Ev.* 1253 ; *Winship v. Bass,* 12 *Mass.* 200 ; which these heirs had not ; *McLellan v. Crofton,* 6 *Greenl.* 302 ; *Voet. Lib.* 39, *tit.* 5 ; and is rebutted by the situation of the parties ; 7 *Wheat.* 59 ; *Dunlap v. Ball,* 2 *Cranch,* 180 ; 4 *Cranch,* 415 ; *Amer. Jurist, No.* 9, *p.* 189 ; *Oswald v. Legh,* 1 *D. & E.* 270. That a previous citation was necessary only where the administrator had never rendered any account ; not where he had accounted falsely, by omitting to exhibit assets already in his hands ; 9 *Mass.* 114, 137 ; *Paine v. Fox,* 16 *Mass.* 139 ; *Coffin v. Jones,* 5 *Pick.* 621. That interest was to be computed on the penalty ; *Bank of United States v. McGill,* 12 *Wheat.* 66. And in support of the surre-joinder ; *Dyer v. Stevens,* 6 *Mass.* 389 ; *Keay v. Goodwin,* 16 *Mass.* 1 ; *Dawes v. Winship, ib.* 291 ; *Kellogg v. Ingersoll,* 2 *Mass.* 101 ; *Pearsall v. Dwight, ib.* 84.

The opinion of the Court was read at the ensuing *November* term, as drawn up by

MELLEN C. J. This case presents several questions for our consideration. A verdict having been returned against the defendant on the several issues to the country, a motion for a new trial has been filed, grounded on the report of the presiding judge. Two motions have also been filed, *one,* wherein the defendant prays that judgment may be arrested ; the *other,* in which he prays that it may be entered in his favor, *non obstante veredicto* ; and lastly, several questions have arisen out of the fourth set of pleadings which terminated in a special demurrer. We shall consider the merits of the motion founded on the judge's report, in the first place.

It is contended that the writ was never indorsed in the manner by law required ; and that as the defect is apparent on the record, no plea in abatement was necessary ; and that as a motion was seasonably made for its abatement, the writ ought to have been abated and no trial had. The 70th section of our statute of 1821, *ch.* 51, declares " that all suits brought in the name of any Judge of Probate, upon any probate bond of any kind, shall be originally com-

menced in the Supreme Judicial Court, held within or for the county in which the said Judge of Probate shall belong ; and the writ in addition to the usual indorsement of the name of the plaintiff or his attorney, shall also have the name of the person or persons, for whose particular use the suit is brought written thereon." It appears that this was done in the present case, but it is contended that the character in which such persons claim, whether as heirs, devisees, legatees, or creditors, or representatives, or assignees of creditors, should have been added. It has been urged in reply to this objection, that in the present case, even the indorsement of the names of the persons, which appear on the writ, was unnecessary ; and several cases were cited in support of this position. We do not deem it of any importance to examine this point, because we are well satisfied that the indorsement is sufficient as it stands. The section above cited does not require any thing more than the indorsement of the names of the persons for whose use the action is instituted. We perceive no reason why we should require more than the statute requires.

It is also contended, that the action is not maintainable, because there was no previous decree of the Judge of Probate, charging the defendant with the amount claimed, preceded by a citation to him to appear and settle his account in the probate office, according to the provision in the 72d section of the beforementioned statute. Admitting at present, for the sake of the argument, that such would be the principle of law to be applied by the court, provided the alleged omission had been presented for decision on a plea in abatement or a special plea in bar, the question is, whether the court can travel out of the issues on which the trial proceeded, and sustain an objection, grounded on the alleged omission of a fact, which the plaintiff might have proved, had the form of any of the issues rendered proof of the fact necessary or proper. In the case of *Bartlett v. Willis & al.* 3 *Mass.* 36, *Parsons C. J.* stopped the counsel, who wished to avail himself of an objection that the sureties of *Willis* had never been approved, there being no plea presenting that point for examination. Our opinion is that the ruling of the judge in this particular was correct, in confining the par-

ties, the jury and himself to those questions, which, on the defendant's pleas were put in issue. This answer is applicable to both branches of the objection, but in respect to a previous decree of the Judge of Probate, charging the defendant with the amount of the two notes in dispute, as being a necessary preliminary to the maintenance of this action, we think the answer of the plaintiffs counsel is a satisfactory one ; namely, that the office of a decree is to act upon the property when accounted for by the defendant in his capacity, to the Judge of Probate, and placed under his immediate, judicial controul.

Little, if any, reliance seems to have been placed on certain objections, stated in the report having reference to the rejection of the letter of the intestate written in· 1792. It was rejected on the ground of its irrelevancy, being dated seven years before one of the notes in question was given, and twelve years before the other was. It certainly could not have had any tendency to prove the defence relied on. The other letter of *August* 31, 1800, the admission of which is complained of, was admitted as explanatory of one from the·intestate which had been introduced by the defendant. Both were proper evidence as instructions from the intestate to his brother *Andrew*, who was his agent as to the custody of certain notes therein specified, and as to the intentions of the intestate. We have no hesitation in saying that they are both as unimportant as the counsel have, in their argument considered them.

The next inquiry is, whether the instructions of the judge to the jury were correct, as to the presumption of payment, arising from the lapse of nearly twenty four years between the time when the last note became due, and the commencement of the present action, and the application of that principle of law on presumption to the case at bar. It appears that the defendant was appointed administrator *November* 28, 1804, almost three years before the last and large note became due, though about fifteen months after the first note became payable. Upon pleas of *nil debet* and payment, and issues thereon, the defendant placed his defence before the jury on two grounds. 1. That the intestate never intended that said notes should be paid or called for, in case of his decease. 2. That said notes

had been paid. Whether they were intended to be considered as forgiven and not to be called for in case of his decease, and, if not, whether they were paid to the intestate in his life time, were both pure questions of fact for the jury to decide, and on these points it does not appear that the judge gave, or was requested by the defendant to give, any particular instructions; as to this part of the cause, therefore, no legal questions arise. The instructions had relation to the presumption of law, as applied to the present case, where the defendant was at the same time a debtor to the intestate and administrator on his estate; that is, the person to pay the notes and the person to receive payment. As there was no direct proof of payment offered, every thing depended on the legal presumption; and in such circumstances, in the absence of all repelling evidence, it would be that the defendant had taken up the notes, or in other words, had cancelled them, holding himself responsible for the amount due thereon; *Winship v. Bass & al.* 12 *Mass.* 199; but such a presumption certainly would not aid the defence; for instead of excusing, it would only charge him with the receipt of it. As no other person had a right to receive the money due on the notes, how can the usual presumption of payment from lapse of time be applicable to such a case as this? It is said that as the notes in question were found among the papers of *Henry Titcomb* about twenty-two years after they were both due, and their existence was then first known to the heirs for whose benefit this action is prosecuted, this fact distinguishes it from ordinary cases where the same person is promissor and administrator of the promisee; but it must be noticed that there was proof in the cause tending to show that the defendant must have known where the notes were deposited during the long period of their concealment, although others were ignorant as to that fact; and under the instructions given them, the jury have found that the defendant knew or had reason to be satisfied where the notes might have been found by him on application for the purpose. It is true that for some years before the death of *Moses Titcomb*, *Henry* was the attorney of the intestate; but all his power s, as such, were at an end on the intestate's decease; of course he had no right to receive payment of the notes. We are all of opinion that the

40

judge, as to the legal presumption, was more indulgent and liberal in his instructions than settled principles will justify; and had the verdict been for the defendant, and the above instructions excepted to by the plaintiff, it would, in our opinion, have been difficult to sustain it. But it has been further contended with great earnestness that the numerous facts which are generally referred to in the report and were examined or alluded to in argument, furnished a legal ground on which the jury might have presumed that the defendant had paid or accounted to the heirs of the intestate for the amount of the notes, without the formality of any proceedings in the Probate Court, by way of a settled account and a decree thereon; and that the judge should have left this question to the jury and not have confined them as he did by his instructions. The obvious reply to this objection and argument is, that the law does not presume that an administrator does wrong; it does not presume that the defendant did what, by law, he had no right to do; that is, that he had made an unauthorized payment to the heirs under the circumstances mentioned. He was bound to account to the Judge of Probate, and he had no right to pay the heirs but under decree. To presume it, would be to presume against law and right. We do not mean to say that had there been proof that the amount of the notes had been actually apportioned and paid to the several heirs, though without a decree of the Probate Court, it might not, in a hearing in Chancery, be a bar to an execution for any thing beyond nominal damages. It would be as strange to sanction the presumption above mentioned, as that which was relied upon in another part of the argument to prove that the intestate had forgiven the debt due on the notes. Wrongs and gifts are not to be presumed; they must be proved.

Again, it is urged that the condition of the bond declared on was violated as soon as the bond was executed, and that on that ground the legal presumption of payment was sufficient to bar the action, and that so the jury should have been instructed. Presumption of payment to whom? To the defendant himself as administrator, is the only answer that can be given on legal principles. Having then so received it, has he rendered any account of the sums so paid? If he had, the records of the Probate Court would show it, and the

aid of presumption would be unnecessary, even if admissible as evidence in such a case.   If the counsel for the defendant means, that from lapse of time, the bond must be presumed to have been in all things satisfied and its condition in all things performed, and that so the bond twenty years before the commencement of this action had become a dead letter, we need only resort to the evidence alluded to in the report to find an answer to this argument.   It there appears that so lately as in *November* 1825, the defendant settled his last account of administration on said estate in the Probate office. Here, surely, is a distinct recognition of the existing obligation of the bond, and exercise of his official authority, in the performance of the duties imposed by the condition of the bond, which was intended, like all other administration bonds, as a continuing security, until all the estate of the intestate should be faithfully administered. Indeed this presumption does not seem applicable, except in cases of bonds or other contracts for payment of money or other articles, or performance of some act or acts at certain specified times.   In such cases and such only it would seem there could be a *terminus a quo* the computation is to be commenced.   *White v. Swain,* 3 *Pick.* 365.

We have thus examined the several points which have been raised and argued, as growing out of the report of the judge, and his decisions and instructions to the jury ; and we are all of opinion that the motion for a new trial cannot be sustained ; accordingly the verdict must stand.

As the motion in arrest of judgment is, of course, founded on facts appearing on the record, but which have no connection with those alleged in the fourth set of pleadings, on which the motion is founded for judgment for the defendant, we shall proceed now to the consideration of the motion in arrest of judgment ; leaving the merits of the other motion to be examined, in connection with, and and as one of the questions arising on the demurrer ; this will save the trouble of a distinct and second examination of it, in the form in which it is presented by the motion.

The reason assigned in arrest of judgment is, " because it appears upon the record that *Moses Titcomb,* the intestate, was at the time of his decease a foreigner and had his domicil in a foreign

country, to wit, in the island of *St. Croix* in the West Indies ; and that this suit is brought for the benefit of certain heirs in this country ; whereas, the defendant, if accountable for any assets in his hands, is accountable to the ordinary of the place of his said domicil." It is somewhat singular that though the defendant, more than twenty six years ago, was appointed administrator on the estate of the intestate, and, as appears by the evidence generally referred to in the report of the judge, as before mentioned, has settled several accounts with the Judge of Probate of this county, and, pursuant to his decree, has paid to the heirs at law above ten thousand dollars, should now deny his liability to account in the same manner for the amount of the notes in question, which the jury have found to be now in his hands.   It does not appear on the record, that any administration was ever granted on the estate in *St. Croix* ; but if it did so appear, and that the administration in this county was merely ancillary, that circumstance would not be of any importance ; for it is a familiar principle that executors or administrators appointed in any other State or country, cannot maintain an action in their representative capacity in this State.   *Cutter v. Davenport*, 1 *Pick.* 86 ; *Stevens v. Gaylord*, 11 *Mass.* 263.   Besides, if the administration were ancillary, the debts here must be collected and accounted for to the Judge of Probate, under whose authority the administrator proceeds.   In the action of *Dawes Judge &c. v. W. N. Boylston*, administrator *de bonis non* with the will annexed of *Thomas Boylston*, which had been proved in England, it appeared that the defendant as administrator, had recovered a judgment in Massachusetts for above $100,000, and received the avails of it : The object of the suit was to compel him to render an account of it to the Judge of Probate, that the town of *Boston* might thus obtain the benefit of the property given in the will.   The defendant had asserted a claim to the property as his own, and declined accounting for it.   *Sewall J.* in delivering the opinion of the court says, " The jurisdiction here exercised for this special purpose does not interfere with, but is auxiliary to the jurisdiction where probate of the last will of *Thomas Boylston* has been granted."   He, in conclusion, adds " the defendant's refusal to acknowledge as assets in

his hands as administrator, and to account for the effects received and collected upon the judgment recovered by him against the executor of the last will of *Moses Gill* deceased, is a forfeiture of the bond declared on." The above case of *Stevens v. Gaylord*, and *Dawes, Judge, &c. v. Head & al.* 3 *Pick.* 146, both distinctly recognize the same principle and course of proceeding. What disposition shall be made by the Probate court of the property in question after the same shall have been duly accounted for to that tribunal, is not now a subject under consideration ; the only enquiry is, whether the bond has been forfeited by the defendant's omission of official duty.

We are unable to perceive, why the principles above stated are not as applicable in the present action, as they would be if another person had been appointed administrator,—received payment of the notes from the defendant,—refused to account for the money,—and the action had been commenced against such person. The conclusion to which this investigation has conducted us, is that, according to legal principles, as we find them settled, there is no ground for the motion in arrest of judgment. The only remaining questions arise out of the fourth set of pleadings, which have resulted in a special demurrer to the surrejoinder, assigning numerous causes as shewing its insufficiency. We have carefully examined all the pleadings, as well as the surrejoinder, but in the view we have taken of this branch of the defence, we have not found it necessary to decide on the merits of the surrejoinder or the rejoinder, and accordingly shall not express any opinion as to either ; but confine ourselves to the examination of the plea and replication. For it is an established principle of law, that when pleadings are terminated by a joinder in demurrer, the court are to look to all parts of them, and, as it is technically expressed, found their decision upon the whole record ; and if according to such record, it does not appear that any legal defence, or ground, or cause of action is disclosed, it is the duty of the court to decide the cause against the party thus appearing to be destitute of merits, whether the part of the pleadings particularly demurred to is good or bad. This principle is laid down by Lord *Hobart* in the case of *Foster v. Jackson, Hob.*

56, in these words, " Though the parties will join issue upon some one point, upon which, if it stood alone, judgment should be given for the one party; yet if upon the whole record matter of law appear, why judgment should be given against the said party, the court must judge so ; for it is the office of the court to judge of the law upon the whole record; and the consent of parties cannot prejudice their opinions, nor quit them of their office in that point." This is the law in case of demurrer. Again, in the case of *Brickhead v. Archbishop of York, Hob.* 199, the principle is laid down thus, " It is regularly true in law, that if upon the whole record it appear that the plaintiff had no cause of action, and especially of his own shewing, that the court shall never give judgment for him, however the defendant had misdemeaned himself in his pleading; for *melior est conditio possidentis* ; and the defendant is safe, if the assailant misses him, for *vana est sine viribus ira.*" With these principles as our guide, let us examine the plea and replication, and see who has been guilty of the first and decisive fault in pleading. The declaration in this case is in the usual form, setting forth, in substance, the penal part of the bond. This is all which the plaintiff was bound to do leaving the breach to be assigned in the replication. Of course the declaration is good and sufficient. To this declaration the defendant, after craving *oyer* of the condition of the bond and setting it out, pleads in bar that he paid, before the commencement of the action, three several sums of money to the heirs and creditors of the intestate, amounting in all to $10,853 21, being more than the amount of the penal sum of the bond, all which were allowed and sanctioned by the Judge of Probate. Does this fact constitute a legal bar to the action? By the condition of the bond the defendant was bound to administer according to law, not only the goods and chattels "rights and credits of said deceased," of which he was bound to make and exhibit an inventory to the Judge of Probate, but " all other the goods and chattels, rights and credits of the said deceased at the time of his death which at any time after" should " come to the hands and possession of the said *Titcomb.*" Now the plea does not state any fact but the payment of the above sum to the heirs and creditors of the deceased ; it contains no aver-

ment that he had administered according to law and rendered to the Judge of Probate an account of all the property which had come into his hands and possession, which belonged to the deceased ; neither does it contain any averment that he presented an inventory or a true account under oath to the Judge of Probate at the respective times mentioned in the condition of the bond. When *oyer* of a bond is craved and set forth in the plea, it becomes a part of the declaration and must be answered as such ; yet the plea does not distinctly meet and answer any one of the particular stipulations on the part of the defendant. It has no resemblance to a plea of general performance, which would have been good. It is true, such a plea was pleaded, which was followed by a replication, rejoinder and issue to the country ; but that plea cannot aid this ; it must stand or fall according to its own merits. But the counsel for the defendant would at once avoid all the objections above stated, by the application of one single principle (on which he has based his motion for judgment in favor of the defendant *non obstante veredicto*) namely, that the liability of the defendant and his sureties was terminated the moment he had legally administered upon and legally accounted to the Judge of Probate and to those interested for a sum equal to the penalty of the bond, as the defendant has done in the case at bar ; and his argument is, that if this is not the true principle, it will always be the interest of an administrator, in all cases, where the bond is for less than the value of assets, to render no inventory or account, but suffer judgment for the penalty and pay it. It is true, a dishonest administrator may always do this ; still a Judge of Probate may always guard against danger from dishonesty by requiring a bond in a sum, and with sureties amply sufficient for the purpose. But we apprehend the principle assumed by the counsel can never be sanctioned.

The design of all official bonds, is to secure from losses those who are, or may be interested in the faithful discharge of the duties mentioned in them. Such bonds are given to protect against damage, occasioned by unfaithfulness, negligence or dishonesty in such officers ; not, for instance, that an administrator, or a state or county treasurer, or collector of the customs, through all whose hands mon

ies are to pass to double or to ten times the amount of their respec-
tive bonds, should faithfully pay over a sum equal to the penalty of
his bond, and that then the bond should instantly lose its force and
become a dead letter.   No.   The principals and sureties in such
bonds are answerable for losses to the amount of the penalty, if noth-
ing more ; their direct liability amounts to nothing so long as the of-
ficer promptly and faithfully discharges his duties.   When, from the
neglect of them, persons interested suffer losses and damages, then
the unwelcome and immediate accountability on the bond commen-
ces.   Sureties on such bonds, are in some respects, like under wri-
ters upon the pecuniary responsibility and official fidelity of their
principals.   We do not deem it necessary to cite any authorities on
this point.   Considering the plea in bar in any point of view we are
all satisfied that it is bad and insufficient in law.   The only remain-
ing inquiry is whether, notwithstanding the badness of the plea, and
that it is the first fault in the pleading, the plaintiff is entitled to
judgment.   In cases as they ordinarily occur and according to the
general rules of pleading, he certainly would be, in such a state of
the pleadings.   Does this case furnish an exception from the gen-
eral principle ?   The authorities must answer this question.   Where
the defendant pleads a performance of conditions in an action on a
bond, though it is not well pleaded, yet the plaintiff in his replication
must assign a sufficient breach, for he has not a cause of action un-
less he shews one.   *Meredith v. Alleyn,* 1 *Salk.* 138. `So in *Nor-
ton v. Simmes, Hob.* 12, *(Williams'* edition,) it is decided that if in
debt on bond for performance of covenants the defendant pleads an
insufficient plea of performance, and the plaintiff in his replication as-
signs no sufficient breach, he cannot have judgment.   So also if it
appears by the replication to an insufficient plea, that the plaintiff
had no cause of action at the time of commencing his suit, he can-
not have judgment.   *Brickhead v. Archbishop of York, Hob.* 197,
and *Perkin v. Perkin, ib.* 128, *a.*   In the case of *Keay v. Goodwin,*
16 *Mass.* 1, the court say,  " It is the duty of the court to look at
the whole record ; if to a defective plea the plaintiff replies and shews
that he had no cause of action, he is not entitled to judgment, although
the declaration be good and the defendant was guilty of the first fault

in pleading." We need not cite more cases. In the case before the court, the defendant has pleaded what he intended and considered as a bar to the action, and as saving him from the penalty of the bond; and though an insufficient plea, it does not admit and profess to excuse a breach by nonperformance of conditions; and therefore, whether the plea be considered as good or bad, the plaintiff as he did not demur to the plea, was bound to assign a sufficient breach in his replication, with all necessary averments to entitle him to maintain his action. Does the replication contain such an assignment and such averments? It states that the notes in question were justly due to the intestate at the time of his death, and that the defendant, as administrator, never rendered any account of them to the Judge of Probate, or in any manner charged himself on account thereof. By the verdict, he stands liable to account, but the replication does not contain any averment, that prior to the commencement of the action he had been cited by the Judge of Probate to render an account of said notes and charge himself with their amount; and it is contended that this omission is fatal to the present suit. The 72d section of ch. 51, of our revised statutes prescribes the mode of proceedings in actions on probate bonds by creditors and heirs to recover what may be due to them respectively from an administrator, as ascertained by judgment of court or a decree of the Judge of Probate; in all which cases a previous demand on the administrator must be proved. The paragraph of the section applicable to the present case, as disclosed in the replication, is in these words : "and when the administrator shall refuse or neglect to account upon oath for such property of the intestate as he has received, after he has been cited by the Judge of Probate for that purpose, execution shall be awarded against him for the full value of the personal property which has come to his hands, without any discount, abatement or allowance for charges and expenses of administration or debts paid." This is a severe and penal provision and should certainly receive a strict construction. The statute of 1786 on this subject, now in force in Massachusetts, is in the precise language of the above quotation, excepting that when the general revision of the Massachusetts statutes took place in 1821, the words " es-

pecially if" were erased, and the word " after" inserted in their place, for the very purpose of leaving no room for doubt or option, as to the necessity of issuing a citation in the case alluded to. The words in the statute, " especially if he has been cited by the Judge of Probate," seem to have left it as a matter of discretion whether to issue a citation or not. But according to our statute no such discretion exists. Besides it appears that in Massachusetts the practice has been, generally at least, to cause an administrator to be cited before he was sued on his administration bond. Thus in the case of the *Selectmen of Boston v. Boylston*, 4 *Mass*. 318, and *Dawes v. Boylston* 9 *Mass*. 337, both of which are cited and commented upon in *Nelson v. Jaques & al*. 1 *Greenl*. 139, (in which the provision of the act of Massachusetts was a subject of examination and construction) the Supreme Court of the Commonwealth gave a construction evidently requiring a citation before suit; and a citation was served on the defendant before he was sued in the action on the bond. In the above mentioned case of *Nelson v. Jaques*, this court proceeded expressly on the ground, that no action could be sustained on the administration bond for not accounting, until a citation had been issued and the administrator had unreasonably neglected to render his account; and this opinion was founded on the act as now in force in Massachusetts; which does not, in terms require it, as our own statute does.

It has, however, been contended by the counsel for the plaintiff, that the foregoing provision in our statute as to the necessity of a citation before an action can be maintained on a bond against the administrator for not accounting for property, applies only to those cases where he had never settled or rendered any account whatever. The language does not impose any such limitation, nor seem to justify so narrow a construction. In *Nelson v. Jaques*, there must have been an account settled, as the basis of an application to sell the land, for the proceeds of which the action was brought on the bond; and in the case of *Paine v. Fox*, 16 *Mass*. 129, the defendant had settled two accounts, and the object of the suit was to compel him to account for some trifling sum which he had received, but had not accounted for; there was no averment that it was re-

ceived before the settlement of the accounts. But the chief justice explicitly states, that if the money was received after, an action could not be maintained on the bond, until the administrator had been cited before the probate court; yet this is a case on which the counsel particularly relies. The chief justice further remarks that " perhaps it would not be material to allege that the defendant had been cited, if by distinct averment it appeared that the sum alleged to be received, was in fact received before the accounts were settled." He adds that if the omission to account for the money was fraudulent, it might be a reason for dispensing with the necessity of a citation. Both the above intimations of an opinion are mere *dicta*, not called for by the case, nor connected with the decision. It is true that the defendant must be considered as having, in his capacity of administrator, received the amount due on the notes in question as soon as he entered on the duties of his office, or at least as soon as it became due; but considering the strong and unequivocal language of our statute as to the necessity of a citation before the commencement of an action, we are of opinion that the time when the money was thus constructively received by the defendant does not vary the application of the statute principle. Whether the omission on his part to render an account of the money if fraudulent, would render a citation unnecessary, we apprehend it is not important for us to decide. The replication contains no averment of that kind, and fraud is never to be presumed. It is true that in the inducement to the traverse in the plaintiffs surrejoinder there is an allegation, that the defendant clandestinely and fraudulently concealed and kept back said notes and never made an inventory or rendered any account of them, but we apprehend that the defects and deficiencies of the replication are not to be supplied by averments borrowed from the surrejoinder. In the case *U. States v. Arthur*, 5 *Cranch*, 257, *Marshall*, C. J. says, " upon demurrer the judgment is to be against the party who committed the first error in pleading. The want of *oyer* is a fatal defect in the plea of the defendant; and the court cannot look to any subsequent proceedings. The plea was bad when pleaded." It is the office of the replication, in an action on bond, to assign breaches sufficient to support the action, if true. But in addition to

this decisive opinion on this point, we would go on and observe that the before mentioned allegations in the inducement are not admitted by the demurrer to be true; the fact stated in the traverse, namely that the debts due on the notes were never realized and forgiven by the intestate to the defendant, is considered as admitted by the de- murrer. There are several authorities which seem to be decisive on this point. "When the inducement is made and concluded with a traverse of a title shewn by the plaintiff, there the plaintiff is en- forced to maintain his title, and not to traverse the inducement to the traverse." *Lady Chichesley v. Thompson & al. Cro. Car.* 105. In the case at bar the traverse is of the defendants title to the amount due originally on the notes; of course he could only main- tain his title and not traverse the allegation of fraud in the induce- ment in the surrejoinder. So in *Earl of Pembroke v. Bostock & al. Cro. Car.* 174, it is laid down that "a matter pleaded only by way of inducement, need not be answered." Again—"An induce- ment to a traverse is not traversable; but the defendant should have maintained his bar." *Stockman v. Hampton, Cro. Car.* 441. Again—"An inducement to a traverse does not require so much certainty as another plea; because, generally, it is not traversable." *Com. Dig. Pleader G.* 20. Now as the defendant, if he had not demurred to the surrejoinder, could not have traversed the facts sta- ted in the inducement to the plaintiffs traverse, he ought not to be considered as admitting their truth, and, of course, cannot be affec- ted by them in any manner whatever. As the replication, then, contains no averment that the defendant had been cited by the Judge of Probate to render an account of the sum due on the notes, prior to the commencement of the action, nor (whether necessary or not) that he had fraudently omitted to render such account, we feel bound to pronounce it bad and insufficient in law. The opinion thus express- ed, renders it unnecessary for us to take any further notice of the motion to enter judgment; for the consequence of the opinion is that such must be the judgment, *non obstante veredicto*. We might have spared ourselves much of the labor of investigation by deciding the cause at once, upon the demurrer, without adverting to any other branch of the cause; but as every ground of objection was occupied

Potter *v.* Titcomb.

i 1 argument by the respective counsel, we concluded to express our opinion on every point, as it may be useful to the parties to be apprised of it; and because we have perceived an unusual degree of interest manifested by all concerned as to the result.

*Replication adjudged insufficient.*

After this opinion was read, the counsel for the plaintiff filed a motion for leave to replead, by alleging that the defendant had never returned any *inventory* of the notes in question; and the cause stood over to *May* term, 1832, for the consideration of this motion, it being resisted by the defendant.

*Fessenden* and *Shepley*, previous to the argument upon this motion, prayed to be heard in behalf of the plaintiff upon a point which they deemed material, but which had not yet been argued;—viz. that the defendant's fourth plea was not what the court seemed to have assumed that it was, a plea of performance; but that it was a plea confessing and excusing nonperformance; and that therefore no allegation of a breach was necessary on the part of the plaintiff. And the court consenting to hear an argument upon this point, they contended that the plea in effect admitted a breach of the bond, because it did not set up a performance. The matter pleaded is in justification of nonperformance, and is altogether collateral in its character. The defendant does not pretend that he has paid the money, or done any act equivalent to it; but excuses the omission by alleging other facts. The plaintiff, then, is at liberty to take issue on the justification. He is not bound to assign a new breach, for no breach is denied. Nor ought he to allege that the defendant had been cited to account, unless he had previously admitted the existence of a state of things rendering a citation necessary. *Lawes on Pl.* 37, 38; *Ayer v. Spring,* 10 *Mass.* 83; *Griffin v. Spencer,* Cro. El. 320; *Palister v. Little,* 6 *Greenl.* 352; *Bailie v. Taylor,* Cro. El. 899; *Jeffrey v. Guy,* Yelv. 78; *Shelley v. Wright,* Willes, 9; 1 *Chitty's Pl.* 556, 598; *Fletcher v. Hemmington,* 2 *Burr.* 944; *King v. Phillips,* 1 Str. 394; *Nicholson v. Simpson,*

*ib.* 297 ; *Jones v. Bowdin,* 1 *Salk.* 123 ; *Attor. Gen. v. Elliston,* 1 *Stra.* 191 ; *Jay v. Kent, Hardr.* 418 ; *Smith v. Yeomans,* 1 *Saund.* 316 ; *Muscat v. Barrett, Cro. El.* 369 ; *Wotton v. Hele,* 2 *Saund.* 181 ; *Lenthall v. Cook,* 1 *Saund.* 161.

In support of the motion for leave to replead, and to show that it was within the power of the court to grant, even after joinder in demurrer, they cited *Walker v. Maxwell,* 1 *Mass.* 104 ; *Aiken v. Sanford,* 5 *Mass.* 494 ; *Perkins v. Burbank,* 2 *Mass.* 83 ; *Eaton v. Stone,* 7 *Mass.* 312 ; *Gerrish v. Train,* 3 *Pick.* 124 ; *Gray v. Jenks,* 3 *Mason,* 520 ; *Hallock v. Robinson,* 2 *Caines,* 233 ; *Potter v. Webb,* 5 *Greenl.* 330 ; 6 *Greenl.* 14 ; *Clement v. Durgin,* 1 *Greenl.* 300 ; 5 *Greenl.* 9 ; *McLellan v. Crofton,* 6 *Greenl.* 307 ; *Furman v. Haskins,* 2 *Caines,* 369 ; *Coffin v. Cottle,* 9 *Pick.* 287 ; *Williams v. Hingh. Turnpike,* 4 *Pick.* 349.

And they contended that the proposed replication would be good, and to the merits of the action. The statute makes it the duty of the administrator to render an inventory of all the rights and credits, as well as other property of the intestate in his hands. If he neglects this, it is a breach. He is further to account for any which may afterwards come into his possession. The neglect to return an inventory, is not a case requiring a citation. The remedy lies directly by suit upon his bond. The object of a citation is merely to compel an account, in the cases enumerated in the statute. *Walker v. Hall,* 1 *Pick.* 20 ; *Selectmen of Boston v. Boylston,* 9 *Mass.* 358 ; *Paine v. Gill,* 13 *Mass.* 365 ; *Parsons v. Mills,* 1 *Mass.* 431 ; 2 *Mass.* 80 ; *Prescott v. Pitts,* 9 *Mass.* 376.

*Longfellow* and *Daveis* argued for the defendant, that it was contrary both to principle and precedent to award a repleader after joinder in demurrer ; 1 *Chitty's Pl.* 630 ; 2 *Saund.* 319, *note b* ; *Cro. El.* 318 ; 5 *Com. Dig.* 497 ; *Staple v. Hayden.* 2 *Salk.* 579 ; it is granted only after joining an immaterial issue. *Holden v. Clap,* 1 *Mass.* 96. Nor is it ever allowed on the motion of him who committed the first fault in pleading. 1 *Chitty's Pl.* 664 ; *Eaton v. Stone,* 7 *Mass.* 312. Nor in any case where the court can give judgment on the whole record ; *Parnham v. Pacey, Willes,* 532,

533 ; which in the case at bar, they may well render for the defendant, the plaintiff himself having shown that he has no cause of action. *Dr. Burnham's case*, 8 *Co*. 239 ; *Turnor's case, ib*. 265 ; *Mansfield v. Patterson*, 15 *Mass*. 491 ; 14 *Vin. Abr*. 586 ; *Worsley v. Wood*, 6 *D. & E*. 710 ; 5 *Dane's Abr*. 637.

They further contended that the matter of the plea itself was not collateral in its nature ; but was direct, to the substance of the declaration ; being an allegation of payment ; which was sufficient, till a breach was shown by the plaintiff. 5 *Dane's Abr*. 426 ; 1 *Chitty's Pl*. 325, 329 ; *Harlow v. Wright*, *Cro. Car*. 195.

And that upon the whole case the defendant was entitled to judgment, the defect of citation being incurable. The proposed replication is virtually to bring to another trial the matter already disposed of. For the statute, in speaking of inventorying rights and credits, and property subsequently discovered, means only accounting for them. Having rendered an inventory, the defendant has saved the penalty of the bond, and is entitled to be dealt with according to the course of proceedings in Probate Courts, before he is sued at law. It is there, as in his proper forum, that an administrator is in the first instance amenable. He should first be charged by the Judge of Probate, upon a citation to account, and a decree be passed for the distributive proportion of each heir, before they can have a right to claim their respective shares by a suit upon the bond. To allow them the benefit of this remedy, *per saltum*, is to oust the Court of Probate of its legitimate jurisdiction, and to deprive creditors of all opportunity to obtain payment out of the fund sought to be recovered in this manner. The administrator, also, is but a trustee of the funds in his hands ; and against such the remedy is to be sought, not at law, but in equity ; and in the first instance before the Judge of Probate, by whom such subjects are by statute made cognizable. *Walker v. Hull*, 1 *Pick*. 20 ; *Hooker v. Bancroft*, 4 *Pick*. 53 ; *Winship v. Bass*, 12 *Mass*. 199 ; *Newcomb v. Wing*, 3 *Pick*. 169 ; *Robbins v. Hayward*, 16 *Mass*. 524 ; *Nelson v. Jaques*, 1 *Greenl*. 139.

The opinion of the Court upon the matters thus moved and argued was delivered in *August* 1832, at an adjournment of *May* term, by

MELLEN C. J.   We have listened with close attention to the arguments of counsel respecting the point suggested in the application for an additional argument, and have critically examined the authorities which have been cited.   In the course of the opinion delivered at *November* term 1831, the court observed that the plea did not "distinctly meet and answer any one of the particular stipulations on the part of the defendant."   And they added, "it has no resemblance to a plea of general performance, which would have been good."   It is manifest that the meaning of the court was, that the plea had no resemblance in form to a plea of general performance. It certainly has not.   Still, though they decided that such was the case, and that the plea was not a good one, they intended to be understood as speaking of it, simply in respect to its merits *as they* would be considered on demurrer to the plea, and as unaffected by the replication, yet they did consider and decide the same, as it stands in the fourth set of pleadings, to be sufficient to compel the plaintiff to assign a sufficient breach in the replication.   The court has not decided, nor does it now say that the plea would have been good, if the plaintiff, instead of professing to assign a sufficient breach, had at once demurred to the plea.   We wish the above distinction may be kept in view.   After having thus stated what we intended to decide, and have decided, on the point to which the second argument has been directed, it remains for us carefully to examine the authorities cited by the counsel for the plaintiff, as well as some others, and inquire whether the point in question was correctly decided.

The principles as cited from *Lawes* on pleading, and from *Chitty* are undoubtedly correct, as to the effect of pleas in avoidance, discharge and excuse; neither is there any doubt as to the general principle, that facts properly pleaded by one party, and not denied by the other, are to be considered as, by implication, admitted. Nor is the doctrine contested, applicable to the distinction between

a plea of general performance to a declaration on a bond, and a collateral plea, expressly or impliedly admitting a breach of the condition. The question under immediate consideration is, whether the plea in bar in the present case does admit such a breach; for, if not, then, whatever may be its character, it does not belong to that class of pleas which excuses a plaintiff, in his replication, from assigning a sufficient breach. In *Griffin v. Spencer*, the condition was, that the defendant should pay a sum of money after certain notice. He pleaded that no notice had been given. Here was a clear admission of nonpayment; and the verdict having falsified the plea, the plaintiff had judgment. In such a case the assignment of a breach would have been superfluous. So in *Bailie v. Taylor*, the condition was, that the defendant would pay off a certain mortgage; he pleaded that there was no such mortgage; which necessarily admitted the nonpayment; but the verdict falsified the plea, and therefore, as in the last case, the judgment was properly rendered for the plaintiff. In the same manner in the case of *Bothwright v. Harvey*, the plea distinctly admitted a breach. So in *Jeffrey v. Guy*, which was debt on bond; the defendant pleaded a special, material fact, which the plaintiff traversed, and the issue was found for him, and he had judgment. On error brought, the judgment was affirmed, though no breach had been assigned; because the plaintiff was compelled, by the special issue tendered, to make a special replication, so as thereby to falsify the plea. So in *Shelley v. Wright*, the condition was to pay the plaintiff the balance of certain fees and perquisites, due him; the defendant pleaded that he had not received any fees or perquisites; the plaintiff replied the recital in the condition, by way of estoppel, and the defendant demurred. The court decided that the estoppel applied; and, besides, that the plea admitted a nonperformance of the condition. The same answer is applicable to the cases of *Nicholson v. Simpson*, 1 *Stra.* 297; *Attor. Gen. v. Elliston*, 1 *Stra.* 191, and *Hawkshaw v. Rawlings*, 1 *Stra.* 33. In *Meredith v. Alleyn*, 1 *Salk.* 138; which was debt on a bottomry bond, the defendant pleaded that the ship was lost. The plaintiff replied that she was not lost, and the defendant demurred to the replication, thereby

42

admitting its truth and the falsehood of the plea. The plaintiff had judgment. _Holt C. J._ observing that the true difference is, where the plea admits and supposes a nonperformance, there a breach need not be alleged. Now, in each of the abovementioned cases, the fact stated in the collateral plea in bar, by necessary implication admitted a breach of the condition ; and in each case the fact so pleaded was found by verdict or admitted by demurrer to be false. In _Smith v. Yeomans_, the defendant, after craving _oyer_, of the bond declared on, pleaded that in a certain indenture, described in the condition, there were no covenants to be performed on the part of one _Holloway_. The plaintiff craved _oyer_ of the indenture, brought into court by the defendant ; and the same, having been entered at large _in hæc verba_, was demurred to. By the indenture thus set forth, it appeared that there were diverse covenants to be performed on the part of _Holloway_. Judgment was given for the plaintiff on the ground that it appeared judicially to the court that the plea was false. In 5 _Bac. Abr._ 173, the law applicable to the point under consideration, is laid down thus : "In debt on bond with condition, defendant pleaded a collateral plea which was insufficient. The plaintiff demurred, and had judgment, without assigning any breach ; for the defendant, by pleading a defective plea, by which he would excuse his nonperformance of the condition, saves the plaintiff the trouble of assigning a breach, and gives him advantage of putting himself on the judgment of the court, whether the plea be good or not ; but if the plaintiff had admitted the plea and made a replication which shewed no cause of action, it had been otherwise." The case of _Sayer v. Glean_, 1 _Lev._ 54, is cited ; and on examination, it is found fully to sustain the principle. The case of _Hayman v. Gerrard_, 1 _Lev._ 226, reported in 1 _Saund._ 102, under the name of _Hayman v. Gerrard_, seems also in accordance with _Sayer v. Glean_. It was debt on an obligation conditioned that the defendant should render an account of all such monies as should come to his hands, and pay the same to the plaintiff. The defendant pleaded that no money came to his hands. This was merely a collateral plea. The plaintiff replied that certain property came to his hands ; upon which the defendant demurred, because it was not alleged that

he refused to account for it; and that it was not the receipt, but the refusal to account which was a breach of the condition. The court said the replication was insufficient in not assigning a breach that he refused to account. The case above cited from *Bacon's Abr.* is precisely like the case at bar. We have before observed, that if the plaintiff had demurred to the plea, he would have been entitled to judgment; but he waived that right, pursued a different course, admitted the truth of the plea, and gave a replication, disclosing new matter, but no legal cause of action. In direct affirmance of the principle and distinction above mentioned, we may appeal to the decision in *Rigeway's* case, cited by the plaintiffs counsel from 3 *Coke* 52; but before particularly examining it, we would observe that though, as stated in our former opinion, the plea does not, in terms, profess to be one of general performance, nor to contain distinct averments as to a compliance with all the particulars enumerated in the condition; neither does it necessarily imply a nonperformance, as was the case in the several authorities, cited by the counsel for the plaintiff, which have been the subjects of our examination. The plea states that many years since he paid, at two different times, certain sums to the heirs and creditors of the intestate and in the year 1825 he paid another large sum to them; and having settled an account with the Judge of Probate, soon after each of the two former payments was made, approving and allowing the same, he in the said year of 1825, settled his last administration account with the Judge of Probate, who accepted and allowed the same. The sums, so paid and allowed, amounting in all to more than the amount of the penalty of said bond; the nonpayment of which penal sum was the only breach alleged in the declaration; the truth of which plea is not denied in the replication. All this may be perfectly consistent with the fact, that he had performed every duty specified in the condition of the bond; and that the last important duty was the payment over to the heirs and creditors of the intestate of all the avails of the estate on which he had administered. Still we say again, the plea would not have been good, had it been demurred to; but taken in connection with the replication, decided cases seem to have settled the principle, that it *is good* and

sufficient, at least so far as to render the assignment of a sufficient breach in the replication indispensable.

We will now proceed to the examination of *Rigeway's* case. *William Grils* had recovered a judgment against *John Chawner*, who was taken in execution *April* 20, 33d *Eliz.* by *Rigeway*, the defendant, then sheriff, at *Stoke Cannon*; and on the 10th *Dec.* 34 *Eliz.* the defendant suffered him to escape in the parish of *St. Mary of the Arches*, in the ward of *Cheape, London.* The defendant pleaded and confessed that *Chawner* was taken in execution as alleged, and so continued in his custody till the 8th of *December* following, on which day, at *Stoke Cannon*, aforesaid, he broke the prison, and from the custody of the said *Thomas Ridgeway*, against the will of said *Thomas*, escaped; whereupon the said *Thomas* then and there made fresh pursuit after the said *John*, and in the fresh pursuit of the said *John*, in manner aforesaid, the said *Thomas Rigeway* on the 11th day of *December* then next, at *Stoke Cannon* aforesaid, by reason and in virtue of the execution aforesaid, and prior caption and execution aforesaid, took and arrested the said *John*. The plaintiff, by way of replication (by protesting that the defendant did not make fresh pursuit) for plea said, that after the said escape and before the said *John* was retaken, the same *John*, for one whole day and one whole night, viz. at *London*, in the parish and ward aforesaid, was out of the sight of the said *Thomas*, &c. and thereupon the defendant demurred in law. It was in the first place agreed by the whole court, that though the prisoner, who escaped be out of sight, yet if fresh suit be made, and he be retaken *in recenti insecutione*, he shall be in execution. In the second place it was resolved that the plea was insufficient; for the plaintiff had declared of an escape in *London*, and the defendant justifieth the retaking of him at *Stoke Cannon*, and so the escape at *London* is not answered; but forasmuch as the plaintiff, not denying the fresh suit but by protestation, hath only relied upon the matter, that the prisoner was out of his sight, the court will not intend other matter to maintain his action, than he himself hath shewed; and now, on the whole record, it doth not appear to the court that the plaintiff hath cause of action; but it was agreed that if the plaintiff had

Potter v. Titcomb.

demurred upon the bar, he would have had judgment. For the same reason it would seem that as the plaintiff in the present action, has relied upon a breach of the condition by defendant's not accounting for certain property, besides and beyond that accounted for and paid over to the heirs and creditors, as mentioned in the plea, the court ought not to intend any other breach or matter or cause of action, to maintain the plaintiffs action, than he himself hath shewed. This is the doctrine laid down in *Bacon,* as before mentioned, and in some of the cases there cited, and as established in *Rigeway's* case which the counsel for the plaintiff has himself cited. So in *Gewen v. Roll, Cro. Jac.* 132, the principle is stated, that " the Court shall not intend any other breach or cause of action than the plaintiff hath himself shown. See also *Spear v. Buknell* 5 *Mass.* 125.

From this view of the authorities bearing on the point under consideration, we perceive no occasion for changing our opinion as delivered in *November* 1831. It is true, the reasons in support of the principle, the supposed incorrectness of which has been the subject of the last argument, might have been more distinctly stated, and, perhaps, in more guarded language, and with more precise limitations ; but we then did not deem it necessary ; we have, however stated them now, and we cannot but consider them as sound. To the court, at least, they are satisfactory. But, after all, the subject is not one of great moment. As a rule of decision and guide in future, it is of no importance, inasmuch as special pleading has been abolished in this State, by a statute passed since the pleadings in this action were settled. And as it respects the interests of the parties, the question has less influence than may at first be supposed ; because the court are always unwilling that a cause should be finally decided upon a point of technical learning, when a trial may always be had upon its substantial facts and legal principles applied to them, by granting leave to amend the pleadings. A motion to this effect is now before us. Both parties seem to have been less precise than they might have been, and it is desirable that both should be permitted to remove all technical difficulties out of the way as far as possible, that a decision may at last be had on the real merits of the cause.

Since the former opinion was delivered, we would observe that we have discovered an irregularity in the trial of the issues to the country, which escaped the notice of all the counsel, as well as of the judge who presided at the trial of the cause. We allude to a provision in the first section of the *Stat.* 1830, *ch.* 463, " that in all actions upon any bond or penal sum as aforesaid, if the verdict be for the plaintiff, the judgment shall be, as heretofore, for the a-mount of such bond or penal sum, and the jury shall ascertain by their verdict the damages for such of said breaches as the plaintiff, upon trial of the issue, shall prove." The language is explicit and unlimited, embracing all bonds, and it is evidently designed to take from the court the power of settling the amount of damages on a hearing in chancery, and vest it in the jury. The cause was tried at *November* term, 1830, and the jury merely found the several issues for the plaintiff; but did not assess the damages. No sum is found for which execution could issue. Under the peculiar circumstances of this case, our opinion is that the verdict must be set aside and a new trial granted. And the plaintiff has leave to amend his replication according to his motion on file, on payment of costs up to this time ; but, in no event of the cause, are they to be again taxed by the defendant, or recovered back by the plaintiff. The defendant has also leave to amend his plea if necessary.