McClure et al., Admr's, etc., Appellants, v. The Board of County Commissioners of the County of La Plata, Appellee.

1. County Treasurer.
Money collected and received by the treasurer belongs to the county, and he is a bailee thereof, with express and extraordinary liability.

2. Trusts and Trustees.
Money received by the treasurer by virtue of his office constitutes a trust fund, which, if diverted or misappropriated, may be recovered in an action upon his bond, or the county may treat it as a trust fund and follow it wherever it can be traced.

3. Same.
In order to subject the private estate of a defaulting trustee to the payment of the trust fund, while it is not necessary to trace such funds into any particular property, it must be clearly shown that it went into and was used for the benefit of such estate.

4. Same.
The mere wrongful conversion of a trust fund can give the beneficiary no equitable lien upon property belonging to the trustee prior to such conversion, nor upon assets subsequently acquired from sources entirely outside and independent of the fund or its proceeds.

5. Pleading—Proof.
To enforce a constructive or resulting trust, the facts from which such trust is claimed to arise must be clearly alleged, and proved with certainty.

6. Evidence—Reports of Committees.
Reports of committees appointed by the court in pursuance of statute to examine the books of the treasurer are inadmissible as evidence to prove the facts recited.

*Appeal from the District Court of La Plata County.*

Action to declare and enforce a trust.

On the 5th day of January, A. D. 1892, the Board of County Commissioners of La Plata county instituted this action against T. J. McClure, D. L. Sheets and John P. Coston, administrators of the estate of John Reid, deceased, to subject the assets that came into their hands as such administrators to the payment of a balance due to the county from their intestate, as county treasurer. The facts upon which appellee predicates its right to this relief are in substance as follows :

On the 2d day of July, A. D. 1888, John Reid qualified and assumed the office of county treasurer of La Plata county, and held such office until the 5th day of March, A. D. 1890, the day of his death. During such term he collected and received county funds to the amount of $20,000 over and above his disbursements, and the amount in the treasury at the time of his death. On the 12th day of March, A. D. 1890, the appellants were appointed and qualified as administrators of his estate, and as such administrators took possession and control of all his personal and real estate. The cash and other assets in the office, aggregating the sum of $32,997.97 were turned over to Mr. Bell, the successor in office, by appellants, and the sum of $9,145.75 was afterwards paid to the county by Mrs. Reid, out of life insurance received by her upon the death of her husband. It is claimed by appellee that Reid commingled the county funds with his own, and that the individual assets that came into the hands of the appellee were in part the proceeds of such funds, and are held by them in trust for the county. The court below found the issues in favor of appellee, and decreed that the sum of $10,897.25, with interest from November 5, A. D. 1890, be first paid out of such assets.

To reverse this decree appellants bring this appeal.

Mr. J. L. Russell and Mr. George Q. Richmond, for appellants.

Mr. O. S. Galbreath, for appellee.

Mr. Justice Goddard delivered the opinion of the court.

The preliminary question to be met at the threshold of our investigation is as to the relationship that a county treasurer holds to the money that comes into his hands by virtue of his office. It is contended by appellee that the relation is that of bailee of the funds, and by appellants that the relation of debtor and creditor exists between him and the county. Without determining where the weight of authority lies on this question, as there is much conflict between the adjudged cases, we think that under the provisions of our statute relating to a county treasurer, the money collected and received by him belongs to the county, and that he holds a fiduciary relationship thereto that constitutes him a bailee, with express and extraordinary liability. The bond he is required to give before entering upon the duties of his office is conditioned that he "shall faithfully and promptly perform the duties of said office, * * * pay, according to law, all moneys which shall come into his hands as treasurer, and shall render a just and true account thereof, whenever required by said board of commissioners, or by any provision of law, and shall deliver over to his successor in office, or to any other person authorized by law to receive the same, all moneys, books, papers and other things appertaining thereto or belonging to his office." Mills' Ann. Stat. § 886.

Section 890 of Mills' Annotated Statutes provides:

"It shall be the duty of the county treasurer to receive all moneys belonging to the county, from whatsoever source they may be derived. * * * All moneys received by him for the use of the county shall be paid out by him only on the orders of the board of commissioners, according to law, except where special provision for the payment thereof is or shall be otherwise made by law."

It is further provided in section 901 of Mills' Annotated Statutes, "Upon the resignation or removal from office of any

county treasurer, all the books and papers belonging to his office, and all moneys in his hands by virtue of his office, shall be delivered to his successor in office, upon the oath of such preceding treasurer, or in case of his death, upon oath of his executors or administrators," etc.

The supreme court of Indiana having announced the doctrine in several cases that a township trustee, in common with a county treasurer, was not a mere bailee, but the owner of the money that came into his hands by virtue of his office, that court distinguished and limited such ownership in *Rowley v. Fair*, 104 Ind. 189, as follows:

. " But the title of a township trustee in the money for which he is held accountable is only recognized to the extent that is necessary for the better preservation of the various funds which the money represents, and is, in fact, a legal title only in a technical and very limited sense.   The equitable title to, and the beneficiary interest in, such money is in the township, and in that view the money for which the trustee is liable upon his bond really belongs to the township."

It follows that, if the money received by the treasurer by virtue of his office belongs to the county, it constitutes a trust fund, which, if diverted or misappropriated may be recovered in an action upon his bond, or the county may, if it elect, treat it as a trust fund and follow it wherever it can be traced. *Sauer v. Town of Nevadaville*, 14 Colo. 54.

It only remains, therefore, to determine from the evidence in the case whether the appellee has established its right to subject the assets that came into the hands of appellants in their representative capacity, to the payment of the balance found to be due from their intestate to the county.   It is a well settled rule that, where property held in trust has been misapplied and diverted from the purpose of such trust, it may be followed wherever it may be traced, and subjected in its new form to the use of the *cestui que trust*.   *First Nat. Bank of Central City v. Hummell et al.*, 14 Colo. 259 ; *Cook v. Tullis*, 18 Wall. 332 ; *Neely v. Rood*, 54 Mich. 134 ; *Pierce v. Holzer*, 65 Mich. 263.

In the case at bar no evidence was introduced that tended to show in the slightest degree that the money sought to be recovered was invested in any of the property that came into the possession of appellants.   On the contrary, evidence was introduced by them that all the property of which their intestate died seized was owned by him prior to July 2, 1888, or was property that he had received in exchange for other property that he owned prior to that time.   Upon proof alone that Reid as county treasurer had collected the funds in controversy, and that they had not been applied to the use of the county during his lifetime, nor turned over since his death, the court below held that the failure to account for its disposition created a conclusive presumption that it was commingled with Reid's private assets and rendered such assets subject to its payment.   The case of *McLeod v. Evans*, 66 Wis. 401, was relied on as sustaining this conclusion.   That decision was rendered by a divided court.   The majority opinion, if not a departure from, very much enlarges the rule very generally announced in the adjudicated cases, and as correctly stated by Judge Cassoday in his dissenting opinion, " The mere wrongful conversion of the draft by Hodges certainly gave the plaintiff no equitable lien upon the property belonging to him prior to such conversion, nor upon assets subsequently acquired from sources entirely outside and independent of, and wholly foreign to, the draft or the proceeds of it.   To say that it does, is to hold that such wrongful conversion of itself gave the plaintiff a preference over all other creditors, regardless of what became of the draft or the proceeds of it. I am not aware of any adjudicated case sanctioning such a preference.   An equitable lien exists only when the trust money is directly or indirectly traceable to the fund sought to be charged."

Moreover, the facts in that case were dissimilar from those disclosed in the case before us, and furnished some foundation for the claim that the trust money was mixed with private funds.   It was shown that Hodges was engaged in the business of banking; that through drafts drawn on the Chi-

cago bank, the proceeds of the converted draft came into his hands in the course of his business as a banker, and were used by him for the benefit of his estate.

In the case of *Sherwood v. Milford State Bank*, 53 N. W. Rep., p. 923, Judge Durand, after citing cases in point, said: " But in all these cases it is held that the fund must be clearly traced into the hands of the person sought to be charged, and that if the trust property does not remain, but has been made way with by the trustee, the *cestuis que trustent* have no longer any specific remedy against any part of his estate in his insolvency, but they must come in *pari passu* with the other creditors, and prove against the trustee's estate for the amount due them.   This rule has been as steadily adhered to by the courts both of this country and of England as any rule which has ever been adopted for the protection of the general creditors of a bankrupt or of an insolvent."

Upon a careful examination of the cases cited by appellee we find nothing in conflict with the rule, that in order to subject a private estate of a defaulting trustee to the payment of the trust fund that has been by him wrongfully converted, while it is not necessary to trace such funds into any particular property, it must be clearly shown that it went into, and was used for the benefit of such estate.

The rule is well established that to enforce a constructive or resulting trust the facts from which such trust is claimed to arise must be clearly alleged, and must be proved with clearness and certainty.   Pom. Eq., vol. 2, § 1058; Perry on Trusts, § 137 ; *First Nat. Bank of Denver v. Campbell*, 2 Colo. App. 271 ; *Phillips et al. v. Overfield*, 100 Mo. 466.

Tested by this rule, the evidence in this case is clearly insufficient to establish appellee's right to recover in this action.

As this case may be retried, we notice briefly the errors assigned upon the admission and rejection of certain evidence.   The court permitted, over the objection of appellants, the witness Weaver to testify to statements made by defendant Coston to the commissioners, to the effect that the assets in the hands of the administrators were sufficient to

pay all liabilities against the estate, and that, if a sufficient time was given them to realize on personal property, they could pay off the indebtedness claimed by the county; that the assets were figured up, and also the liabilities, to show that there would be sufficient. We are unable to perceive wherein this evidence was relevant. It could throw no light upon the merits of the controversy, or in any way aid the court in arriving at any legal or equitable conclusion involved in the action. It was clearly inadmissible.

The reports of the committees appointed by the district court in pursuance of the statute to examine the books of the treasurer, offered by appellants, were properly rejected. The facts sought to be established by them could not be proven in that way; while the individuals composing such committee might testify as to the amount of money which they found on hand at the time of their investigation, the reports themselves were clearly inadmissible to prove such fact.

For the reasons given in the foregoing opinion, the judgment of the court below must be reversed.

*Reversed.*