[No. 3553.]

GARTLEY ET AL. v. THE PEOPLE OF THE STATE OF COLORADO, FOR THE USE OF PUEBLO COUNTY.

1. OFFICIAL BONDS—COUNTY TREASURER—DEFENSE.

The condition of the county treasurer's bond upon which this action was brought was—as required by statute (Mills' Ann. Stats. sec. 886)—that if the said G. and his deputies and all persons employed in his office shall faithfully perform the duties of said office, and the said G. and his deputies shall pay, according to law, all moneys which shall come into his hands as treasurer * * * and shall deliver over to his successor * * * all moneys belonging to his office, the obligation to be void. *Held,* that the fact that the moneys, to recover which the action was brought were deposited by G. as treasurer, in a solvent bank which subsequently failed, thereby rendering him unable to turn over to his successor the fund in controversy, does not constitute a defense. Goddard, J., dissenting.

2. PRACTICE—JUDGMENT ON THE PLEADINGS.

A judgment on the pleadings in favor of the plaintiff is not in order when any material allegation of the complaint is denied in the answer.

*Appeal from the District Court of Pueblo County.*

THIS is an action brought for the use of Pueblo county, against Wilson P. Gartley, as principal, and J. B. Orman, William Crook, W. H. Anderson and A. M. Pryor and others, as sureties upon his official bond, as county treasurer of Pueblo county. The complaint, *inter alia,* avers his election to said office, the due execution and delivery of a bond in the prescribed form, with the statutory condition ; charges that

he received, in his official capacity, the sum of $10,218.34, which he failed to turn over to his successor in office, and which he converted and appropriated to his own use.

Joint and separate answers were filed by defendants, containing, *inter alia*, a specific denial of the receipt by Gartley of the sum alleged, averring that he never received as such treasurer any moneys in excess of $2,500; that he paid over and truly accounted to his successor in office for all moneys which ever came into his hands as such treasurer; and as a separate and special answer and defense, averred that the moneys sued for were deposited by Gartley, as county treasurer, in a reputedly safe and solvent bank, which bank had subsequently failed while the moneys remained on deposit therein; and as a consequence said Gartley, without any fault or negligence on his part, was unable to turn over to his successor the fund in controversy. Motion for judgment on the pleadings was sustained, and judgment rendered for the sum of $10,218.34 and interest. From this judgment the defendants named prosecute this appeal.

Messrs. WALDRON & DEVINE, for appellant.

Mr. E. C. GLENN, Mr. G. W. COLLINS, Messrs. HARTMAN & GLENN and Mr. D. F. MITCHELL, county attorney, for appellee.

Mr. C. J. HUGHES, JR., Mr. A. B. SEAMAN and Mr. T. J. O'DONNELL, *amici curiæ*.

CHIEF JUSTICE HAYT delivered the opinion of the court.

This is an action against the county treasurer of Pueblo county, and the sureties upon his official bond, for failure to pay over certain public moneys collected by such treasurer. The answer sets up several inconsistent defenses, the most important of which is the claim that the money was deposited by the treasurer in his official capacity in a repu-

table and solvent banking institution, which subsequently failed, so that the money was entirely lost, and, as it is alleged, without any fault or negligence on the part of the treasurer. The district court overruled this defense, and this raises the principal question in the cause. The authorities in support of the liability of the treasurer, and the sureties upon his official bond, in these circumstances are so numerous as to practically preclude the citation of any cases within the limits of this opinion, except those most easy of access. *U. S.* v. *Prescott*, 3 How. 578; *U. S. v. Morgan*, 11 How. 154; *U. S. v. Dashiel*, 4 Wall. 182; *U. S. v. Keehler*, 9 Wall. 83; *Boyden v. U. S.*, 13 Wall. 17; *Bevans v. U. S.*, 13 Wall. 56; *U. S. v. Thomas*, 15 Wall. 337; *Muzzy v. Shattuck*, 1 Denio, 233; *Commissioners v. Lineburger et al.*, 3 Montana, 231; *The State v. Moore*, 74 Mo. 413; *Tillinghast v. Merrill*, 45 N. E. (N. Y.) 375.

The case first cited—*U. S. v. Prescott*,—is admittedly the leading case upon the subject. It was an action against a receiver of public moneys, who had given bond conditioned to keep safely the moneys collected by him, and it was held that the fact that the money was feloniously stolen without any fault on his part constituted no defense. The conclusion reached in that case is affirmed in many later cases, and in no case has it been modified or changed except by act of Congress. It is true that in the subsequent case of *U. S. v. Thomas, supra*, it was held that a receiver of public moneys was excused if prevented from rendering the money by the act of God or the public enemy, without any fault or neglect on his part. The opinion of the court in the *Thomas* case was rendered by Mr. Justice Bradley. As this case has sometimes been referred to as changing the rule announced in *U. S. v. Prescott, supra*, it may be well to note the particular modification of the former opinion which is, in fact, made in that case. This modification sufficiently appears from the opinion wherein it is said of the *Prescott* case:

"After reciting the condition of the bond, the court adds,

with a greater degree of generality, we think, than the case before it required, 'The obligation to keep safely the public money is absolute, without any condition, express or implied; and nothing but the payment of it, when required, can discharge the bond.'

"This broad language would seem to indicate an opinion that the bond made the receiver and his sureties liable at all events, as now contended for by the government. But that case was one in which the defense set up was, that the money was stolen, and a much more limited responsibility than that indicated by the above language would have sufficed to render the defense nugatory."

We think this language shows that the court did not intend to intimate that an incorrect result was reached in the *Prescott* case. The real point decided in the latter case was, that the forceable seizure by the Confederate authorities, during the civil war, of public moneys in the hands of loyal government agents, free from fault or negligence, was a sufficient discharge from their obligations in reference to such moneys. The majority of the court was of the opinion that the facts presented made out a complete defense, and judgment was given accordingly. While Justices Swayne, Miller and Strong dissented from this conclusion, yet it should not be overlooked that this dissent was from the conclusion of the majority that the defense was good. Of the dissenting justices, Miller alone filed an opinion, in which he expressly disclaims speaking for any of his associates. Statements made in this dissenting opinion are relied upon for the purpose of enforcing the argument in favor of the discharge of the defendants in this case; but the dissent of the learned justice was from a decision declaring against the liability of the officer, and not from a decision upholding such liability. In other words, Justice Miller was of the opinion that, as the law then stood, the defense was not good.

The following from the opinion of the court in the case of *U. S. v. Prescott, supra*, has certainly never been modified by

any subsequent decision of that court, and is as applicable to present conditions as it was appropriate at the time it was penned:

" Public policy requires that every depositary of the public money should be held to a strict accountability. Not only that he should exercise the highest degree of vigilance, but that ' he should keep safely ' the moneys which come to his hands. Any relaxation of this condition would open a door to frauds, which might be practiced with impunity. A depositary would have nothing more to do than to lay his plans and arrange his proofs, so as to establish his loss, without *laches* on his part. Let such a principle be applied to our postmasters, collectors of the customs, receivers of public moneys, and others who receive more or less of the public funds, and what losses might not be anticipated by the public? No such principle has been recognized or admitted as a legal defense. And it is believed the instances are few, if indeed any can be found, where any relief has been given in such cases by the interposition of congress."

The decision in the *Prescott* case is put expressly upon public policy and upon the conditions of the bond. The cases in which a contrary result has been reached are few in number and serve to call attention to the general rule, and the unanimity with which it has been indorsed, rather than to weaken the force and effect of the solid foundation upon which the rule rests. The leading case upon the opposite side of the controversy is that of *Cumberland County v. Pennell*, 69 Me. 357. The force of this decision is somewhat weakened by the fact that out of a court of seven members, the chief justice and two associate justices dissented. The majority of the court, in a strongly reasoned opinion, held, however, that robbery constituted a valid defense to an action upon the official bond of a county treasurer for public moneys received by him.

Referring to the Maine case, the supreme court of Nevada, in *State v. Nevin*, 19 Nev. 162, says: " We say the Maine case stands alone in its opposition to what it is pleased to

term the new-born policy of the law. In that case some reliance seems to have been placed upon the case of *Albany v. Dorr*, 25 Wend. 440, but the principles of that case were repudiated in *Muzzy v. Shattuck*, *supra*, and hence we are authorized to say that the case in Maine is unsustained by any other recognized authority in any of the courts of the United States, federal or state."

In the case of *York County v. Watson*, 15 S. C. 1, it was, however, held upon the statutes of South Carolina, that no higher obligation should be exacted of a county treasurer than that imposed by the common law, and in an action on his official bond, the fact that the money was deposited in a savings bank which was in good standing at the time the moneys were placed there, but which afterwards failed, occasioning a loss of the fund, was held a sufficient defense upon the bond. This is the only case to which we have been cited or which we have been able to find in which such a defense has been upheld; while in the very recent cases of *Fairchild v. Hedges*, 44 Pac. Rep. (Wash.) 125, and *Tillinghast v. Merrill*, 45 N. E. Rep. (N. Y.) 375, and *Bush et al. v. Johnson County*, 66 N. W. Rep. (Neb.) 1023, a contrary conclusion has been reached. In these cases it is held that a county treasurer is liable for money deposited by him in a bank which afterwards became insolvent, though free from negligence himself, and though the county has failed to provide a safe place of deposit for the public funds. See, also, *Wilson et al. v. Wichita County*, 67 Tex. 647.

The case of *State v. Houston*, 78 Ala. 576, is also cited in support of the minority rule. We do not think, however, that this case can afford any aid to plaintiffs in error, for the reason that the court bases its decision almost entirely upon the official bond of the officer, while in the case at bar the weight of the argument is directed to show that the official bond can in no way enlarge the liability of the officer, it being given solely, as it is claimed, for the purpose of indemnifying the county in case the officer does not conform his conduct to the requirements of the statutes. The condition

of the bond under consideration by the Alabama court, as fixed by the statute, was "that the collector will, with fidelity, skill and diligence, perform the duties of the office and keep inviolable the trust reposed in him." Although the court held that a bond conditioned as provided by the statute did not impose absolute and unconditional liability, it also decided that the statute and considerations of public policy enlarged the degree of responsibility beyond that of a mere bailee for hire, and that having exercised the highest care, vigilance and diligence to prevent loss, the collector, if robbed of money belonging to the state, by an overpowering force, should be discharged. Here, again, the bond was construed as enlarging the liability, and while holding the defense interposed, good in law, the court confines the defense to a case where the specific funds of the state have been forcibly taken, and adds, that if it should appear that the funds received by the collector have been used or changed for any unauthorized purpose, he will become thereby a debtor, and he and his sureties would be bound to absolute payment, as for a debt. To constitute a defense the court holds that the robbery must be of money, the property of the state, and that where an amount has been substituted for the amount misused, the defense would not be good, and the court expressly limits its decision "to the case of irresistible force." The case, as we have seen, is a direct authority in favor of the doctrine that liability may be enlarged by the conditions of the bond.

It is a mistake to class the New York cases in support of the minority doctrine. It is true that in the case of the *Supervisors v. Dorr*, 25 Wend. 438, the supreme court of New York held that a public officer intrusted with public funds is not responsible for money stolen from his office in the absence of negligence or other default on his part. This case was taken to the court for the correction of errors. See 7 Hill, 583. Upon the question being put upon errror, "Shall this judgment be reversed?", twelve members of the court of errors voted for affirmance, and twelve for reversal. The judges being equally divided in opinion, the judgment of the supreme

court was allowed to stand, but the effect of this equal division did not settle the question of law, and consequently the case has no force as a precedent. *Bridge v. Johnson*, 5 Wend. 342. Indeed, when the question of law again came up in that state for determination, it was settled the other way. See *Muzzy v. Shattuck*, 1 Denio, 233. Of this latter decision, Mr. Hill, in his note to the report of the case in 7 Hill, says: "That decision, which appears to be utterly irreconcilable with the one reported in the text, was subsequently reviewed by the court for the correction of errors, and in December, 1846 was unanimously affirmed." And, as we have said, in the recent case of *Tillinghast v. Merrill*, *supra*, the New York court of appeals takes a position squarely against the contention of appellants in the case at bar.

We do not regard the case of the *State v. Lanier*, 31 La. Ann. Rep. 423, as in point, for the reason that the evidence in that case showed that the robbery pleaded as a defense could have been avoided by the exercise of ordinary care and diligence on the part of Lanier, the tax collector; hence, the defense was not made out, and the court was, consequently, not called upon to decide, and, in fact, did not decide, the abstract question of law as to the validity of the defense of robbery, where the officer has exercised due care and diligence. Hence we find nothing in the opinion to indicate what the conclusion of the court would have been upon the general proposition.

In the case of *Walker v. British Guarantee Association*, 18 Adolphus & Ellis (N. S.), 276, the treasurer, against whom the suit was brought, was sued for private funds. Similar principles do not prevail in such cases, as it is admitted that a higher degree of responsibility is exacted of a public officer entrusted with public funds than of a mere private bailee. See *People v. Walsen*, 17 Colo. 170, and cases cited.

The authorities favoring the stricter rule of liability largely outnumber those favoring the contrary rule, and the courts maintaining the former doctrine are certainly of equal standing and learning as those upholding the "newborn

doctrine." We, therefore, conclude, upon authority as well as reason, that the well established rule upon the subject is, that public officers intrusted with public funds and required to give bonds for the faithful performance of their public duties are not mere bailees of the money, bound only to exercise ordinary care, since their liability is influenced by the policy of the law, which requires greater strictness, and also by the conditions of their official bonds.

In accordance with the great weight of authority this court held, in *Goss v. Commissioners*, 4 Colo. 468, that "the bond of the county treasurer is the measure of his duties as treasurer, and is the contract covering his duties and all those in his employ performing the duties of the office."

In the case of the *State v. Walsen*, 17 Colo. 170, it was contended that the state treasurer is a bailee or trustee of the public funds, and, as such, subject only to the common-law liabilities of trustees. But the court refused to take this view of the law, and pointed out a difference in several particulars wherein the obligation of the treasurer differs from that of an ordinary trustee or bailee. In the *Walsen* case it was held that the state treasurer, under our constitution, was absolutely liable for all the public moneys received by him.

Appellants rely very strongly upon two cases in 19 Colorado—*McClure v. Commissioners*, p. 122, and *Wilson v. The People*, p. 199. In the *McClure* case the attempt was made to trace public moneys collected by the treasurer into the purchase of certain property for the purpose of having a trust declared and enforced against such property. In determining this question, it became necessary to investigate the relationship that a county treasurer holds to the money which comes into his hands by virtue of his office, and the court said: "We think that under the provisions of our statute relating to a county treasurer, the money collected and received by him belongs to the county, and that he holds a fiduciary relationship thereto, that constitutes him a bailee, with *express and extraordinary* liability." As this declara-

tion is immediately followed by the statutory requirements of his bond, it would appear that the enlarged liability imposed was based to some extent, at least, upon the conditions of his bond. The opinion is a direct authority for the doctrine that the relationship of the treasurer to the public money collected by him in his official capacity is not that of a bailee at the common law.

The question presented in the case of *Wilson et al. v. The People, supra,* was as to the liability of the clerk of the district court for moneys of *private litigants,* which had been deposited with him to abide the result of the suit. No question was then before the court with reference to the liability of a public officer for *public* moneys received by him. The case does not refer to the case of *Goss v. County Commissioners,* 4 Colo. 468, and it certainly was not the intention of the court, as then constituted, to overrule the former decision. The conclusion reached in the *Wilson* case was without doubt correct, but in the argument certain expressions were used with reference to the bonds of public officers, which should have been confined strictly to the facts of the case there under consideration.

The bond, which is the basis of this suit, is in the language of the statute. The conditions are the same as those under consideration in the *Goss case, supra,* viz:

"That if the said Wilson P. Gartley and his deputies and all persons employed in his office, shall faithfully and promptly perform the duties of said office, and if said Wilson P. Gartley and his deputies shall pay, according to law, all moneys which shall come into his hands as treasurer * * * and shall deliver over to his successor * * * all moneys * * * belonging to his office, the above obligation to be void. Mills' Ann. Stats. sec. 886.

The bond is not essentially different from that passed upon by the supreme court of the United States, in the case of *U. S. v. Prescott,* 3 How. 578. The statute fixing the form of the bond was enacted in territorial times, when the decisions of the supreme court of the United States upon stat-

utory construction were controlling in this jurisdiction, and by a familiar rule, in adopting the statute we did so with the construction theretofore placed upon it.

It is urged that the force of the decision in the *Prescott* case was practically destroyed by a subsequent act of congress, and that we should, therefore, favor a less strict rule of accountability; in other words, we are asked to construe something into the statute which is not there. As in that case an act of congress was found necessary to give relief, so here relief must come from the legislature and not from the courts.

The strictness of our law with reference to the liability of public officers for public funds is apparent from the constitution and statutes of this state. By section 12 of article 10 of our constitution, it is provided that "the general assembly may provide by law further regulations for the safe-keeping and management of the public funds in the hands of the treasurer, but, notwithstanding any such regulation, the treasurer and his sureties shall in all cases be held responsible therefor."

It is true the last clause of the sentence makes absolute the liability of the state treasurer, for all public funds received by him by virtue of his office, but taking the whole sentence together we are of the opinion that it was not intended to create a new liability but to avoid the possibility of regulation on the part of the general assembly from being construed as creating an exception to the general rule of absolute liability.

In addition to the indication of the policy of the law to be gathered from the condition of the bond of a county treasurer, which we have sufficiently considered, attention is called to the following : " Each county is responsible to the state for the full amount of tax levied for state purposes, excepting such amounts as are certified to be unavailable, double or erroneous assessments, as provided in this act." Mills' Ann. Stats., sec. 3778.

Aside from the instances therein specially excepted, this makes the liability of the county to the state absolute, so that in this case, should the treasurer's special defense be

held good, the county would not, for that reason, be discharged from its obligation to pay over the amount of tax collected for state purposes, although it would have no recourse upon the county treasurer for reimbursement, a construction that we think should not be indulged.

Our conclusion is that in an action on the official bond of a county treasurer for public moneys collected by him, the fact that the moneys were deposited in a solvent banking institution which thereafter fails, causing the loss of the funds, constitutes no defense. Whether a county treasurer would be excused from rendering the money if prevented from doing so by the act of God, or the public enemy, without any fault or negligence on the part of the treasurer, is not presented in this case, and therefore not decided.

Notwithstanding our conclusion is against the appellants upon what we have considered the main controversy in the case, as now presented, the judgment of the district court must be reversed for error in sustaining plaintiff's motion for judgment upon the pleadings in view of the specific denials contained in other defenses of the answer. *People ex rel. v. Lathrop*, 3 Colo. 429; *Pike v. Sutton*, 21 Colo. 84.

For this error, the judgment of the district court will be reversed and the cause remanded for further proceedings, in accordance with this opinion.

*Reversed.*

MR. JUSTICE GODDARD (dissenting).

I cannot concur with my associates in the conclusion that the admitted facts set out in the separate and special answer do not absolve the defendants from liability for the loss of the money in controversy. The importance of the question involved justifies a brief statement of my reasons for dissent. This question concisely stated is, whether under our statutes a county treasurer and his sureties are liable for public funds deposited by the treasurer in a reputable and apparently solvent bank, which are lost by an unexpected and sudden fail-

ure of such bank, when such deposit was made by him in good faith, and after due inquiry touching the solvency of the bank; and where he was guilty of no negligence or fault in allowing it to remain there, coupled with the fact that neither the state nor county authorities provided such treasurer with any safe place or means for the custody of such funds.

Upon the question of the liability of a county treasurer and the sureties on his official bond for the loss of public money coming into his hands, the courts of this country entertain different and irreconcilable views. Some hold, and among them those cited by the chief justice, that the liability is absolute; and that it constitutes no defense to an action for its recovery, that the money was taken by irresistible force, or the loss occurred through unavoidable accident; basing their conclusion either upon the ground that the officer holds the relation of debtor to the county for the money received by him, or upon the theory that an absolute obligation to pay the money when called upon is imposed, when the statute, or the condition of the bond, provides for such payment without modification or condition. This doctrine was first announced in *U. S. v. Prescott*, 3 Howard, 578, decided in 1845, and was based largely on considerations of public policy and the particular provisions of the federal statute, and was accepted as the correct rule as to the liability of receivers of public money in subsequent cases in that court, until very much modified, if not in effect overruled, by the decision in *U. S. v. Thomas*, 15 Wallace, 337.

While it is true that the court did not, in the latter decision, expressly overrule the doctrine of absolute liability announced in the former cases, such I think was the logical result of its reasoning and conclusion. This was the view of Mr. Justice Miller, as shown by the language he uses in his dissenting opinion. He says:

"I understand the opinion in the present case to be directed to two points: First, mainly to undermining the ground on which the prior decisions on this subject rest. * * * As regards the first point, if the opinion or judgment of the court

were based upon a frank overruling of those cases, and an abandonment of the doctrines on which they rest, I should acquiesce in that. * * * But if the opinion of the court is to be construed as permitting those cases to stand as law, while the principles on which alone they can be defended are weakened by its argument, I must express my dissent from that view of the case."

And in the same opinion, in speaking of *United States v. Prescott, supra,* and the other federal decisions wherein so much had been predicated upon the ground of public policy, he said :

"Nor do I believe that prior to these decisions there was any principle of public policy recognized by the courts or imposed by the law which made a depositary of public money liable for it when it had been lost or destroyed without any fault of negligence or fraud on his part; and when he had faithfully discharged his duty in regard to its custody and safe-keeping."

And, no doubt influenced by the manifest injustice of the harsh and oppressive doctrine of those cases, congress, on May 9, 1866, enacted a statute (14 Stat. at L. p. 44), conferring upon the court of claims jurisdiction to hear and determine the claim of any paymaster or other disbursing officer, for relief from responsibility on account of loss of government funds occurring without his fault or negligence, thus practically destroying the effect of those cases in so far as they deny to such officer the right to interpose such defense.

The other line of decisions is to the effect that a treasurer is a bailee of the money that comes into his hands by virtue of his office ; and while he is bound to exercise a very high degree of care in the protection and preservation of such funds, and to strictly and faithfully perform the duties prescribed by the statute, he and his sureties are not responsible for its loss, without fault on his part. This rule is approved in *Cumberland v. Pennell,* 69 Me. 357.; *York County v. Watson,* 15 S. C. 1; *State v. Houston,* 78 Ala. 576 ; *Supervisors v. Dorr,* 25 Wendell, 438 ; affirmed, 7 Hill, 583, by an equally divided court, Chancellor Walworth voting in the

affirmative; and it is also recognized by implication in *State v. Lanier*, 31 La. Ann. 423. In *Walker v. British Guar. Ass'n*, 18 Ad. & E. (N. S.) (83 En. Com. Law. Rep. p. 276), an action on the bond of a treasurer of a benefit association, the same rule of liability obtained.

Upon the doctrine that a public officer who receives money by virtue of his office holds the relation of bailee and not of debtor, former decisions of this court are in accord with the latter cases. *McClure v. La Plata County*, 19 Colo. 122; *Wilson v. People*, 19 Colo. 189.

These cases also recognize the doctrine that the duties and obligations of such officer in respect to the money so received, are measured by the law of bailment, unless effected by constitutional or legislative provisions; and that his official bond does not extend such obligations, but its office is to secure the faithful and prompt performance of his legal duties. This rule is also expressly approved in *U. S. v. Thomas*, *supra*, Mr. Justice Bradley, who delivered the opinion of the court, said:

"So much stress has, in almost every case, been laid upon the bond as forming, either directly or indirectly, the basis of a new rule of responsibility, that it seems especially important to ascertain what are legal obligations that spring from such an instrument. The learned judges in the great generality of the remarks made in some of the cases referred to, with regard to the liability of a receiving officer, and especially of his sureties, by virtue of his bond, have evidently overlooked what we conceive to be a very important and vital distinction between an absolute agreement to do a thing and a condition to do the same thing, inserted in a bond. In the latter case the obligor, in order to avoid the forfeiture of his obligation, is not bound at all events to perform the condition, but is excused from its performance when prevented by the law or by an overruling necessity. * * * The condition of an official bond is collateral to the obligation or penalty; it is not based on a prior debt, nor is it evidence of a debt; and the duty secured thereby does not become a

debt until default be made on the part of the principal. Until then, as we have seen, he is a bailee, though a bailee resting under special obligations. The condition of his bond is, not to pay a debt, but to perform a duty about and respecting certain specific property which is not his, and which he cannot use for his own purposes."

And Mr. Justice Miller, in the opinion already quoted from, said:

" When the case of *U. S. v. Dashiel* came before the court I was not satisfied with the doctrine of the former cases. · I do not believe now that on sound principle the bond should be construed to extend the obligation of the depositary beyond what the law imposes upon him, though it may contain words of express promise to pay over money. I think the true construction of such a promise is to pay when the law would require it of the receiver, if no bond had been given; the object of taking the bond being to obtain sureties for the performance of that obligation."

To the same effect are *Potter* v. *Titcomb*, 7 Me. 302; *Mechanics' Bank* v. *Hallowell*, 52 Me. 545.

Therefore, in my opinion, the solution of the question before us depends upon whether the provisions of the statute of this state prescribing and regulating the duties of county treasurers, impose an absolute duty to pay over the public moneys received by them. These provisions are as follows:

" (Mills' Ann. Stats.) sec. 890: It shall be the duty of the county treasurer to receive all moneys belonging to the county, from whatsoever source they may be derived, and all other moneys which are by law directed to be paid to him. All moneys received by him for the use of the county shall be paid out by him only on the orders of the board of commissioners, according to law, except where special provision for the payment thereof is or shall be otherwise made by law."

" Sec. 891: The said treasurer shall keep a just and true account of the receipts and expenditure of all moneys which shall come into his hands by virtue of his office, in a book or

books to be kept by him for that purpose, which books shall be open at all times for the inspection of the board of county commissioners, or any member thereof, and to all county and state officers; and at the meeting in July and January of the said board of commissioners, or at such other time as they may direct, he shall settle with them his account as treasurer, and for that purpose he shall exhibit to them all his books and accounts, and all vouchers relating to the same, to be audited and allowed."

Section 893 makes it " the duty of the district court of each county in this state, at each term thereof at which a grand jury is summoned and impaneled, to appoint a committee of such grand jury, or other reputable persons, which committee shall consist of not less than three nor more than five, to investigate the official accounts and affairs of the treasury of such county."

" Sec. 894: It shall be the duty of the committee to carefully and fully investigate the official accounts of such treasurer and ascertain the condition of the treasurer's accounts, and of each fund thereof, and to ascertain and report the amount of money due each and every fund and account in the hands of such county treasurer, * * * and the exact amount of each of such funds, where the same are or have been kept, and whether, if not kept in the office occupied by the county treasurer, they have been deposited in any bank or banks, or with any person or persons; to inquire, ascertain and report what interest, if any, has been paid or agreed to be paid, directly or indirectly, for said funds by said bank or banks, or other person or persons with whom said funds may be found to have been left or deposited."

By the act of 1889, sections 1248–51, Mills' Ann. Stats., it is made a felony for a county treasurer to convert to his own use in any way the public moneys in his hands, or to loan the same, with or without interest.

Section 1250 provides that " if any such officer * * * shall make any contract or agreement with any person or persons, bodies or body corporate, or other association, by

which such officer * * * is to derive any benefit or advantage, directly or indirectly, from the deposit with such person * * * of any moneys or valuable securities held by such officer * * * by virtue of his office * * * such contract shall, as to such officer * * * be utterly null and void; but the person or persons, body or bodies corporate, or other association, shall be liable to the county * * * in an action for the recovery of all such benefits or advantage as would, by the terms of such contracts or agreement, have accrued to such officer * * *; and payment to the officer * * * shall not protect the person or persons, body or bodies corporate, or other association, against an action of recovery brought by the county * * * whose funds are so deposited."

The condition of the bond he is required to give before entering upon the duties of his office, as provided by section 886, is in legal effect, a guarantee on the part of the sureties that the treasurer will faithfully perform the duties thus fixed and prescribed by the statute. It will be seen that these provisions merely prescribe the duties of the county treasurer in collecting and disbursing the public revenues, and do not, like sec. 12, art. 10 of the constitution, which prescribes the responsibility of the state treasurer, "in direct terms or by their tenor" subject him to an absolute liability as an insurer of the money so collected, or impose upon him a responsibility in regard thereto other than that which the rules governing the relation of bailee sanction and approve. In *U. S.* v. *Thomas, supra,* Mr. Justice Bradley, in discussing the general rule of official obligation, as imposed by law, said:

" The basis of the common-law rule is founded on the doctrine of bailment. A public officer having property in his custody in his official capacity is a bailee; and the rules which grow out of that relation are held to govern the case. But the legislature can undoubtedly, at its pleasure, change the common-law rule of responsibility. * * * Where, however, a statute merely prescribes the duties of the officer, as that he shall safely keep money or property received or collected and shall pay it over when called upon to do so by the proper

authority, it cannot, without more, be regarded as enlarging
or in any way affecting the degree of his responsibility.  The
mere prescription of duties has nothing to do with the ques-
tion as to what shall constitute the rule of responsibility in
the discharge of those duties, or a legal excuse for the non-
performance of them, or a discharge from their obligation.
The common law, which is common reason, prescribes that ;
and statutes, in subordination to their terms, are to be con-
strued agreeably to the rules of the common law."

My conclusion is that, while the provisions of our statute
in relation to a county treasurer do not constitute him an
insurer of the money that comes into his hands, yet when
construed in connection with the nature of the trust imposed
upon him, affecting as it does the welfare of the public, their
intention manifestly is to exact the utmost fidelity and the
exercise of such a degree of care on his part in the safe keep-
ing and preservation of the same as is commensurate with
the importance of the duties imposed; that is, the highest
care known to the law, such as a very prudent man exercises
in the management of his most important affairs.  *State v.
Houston, supra*; *McClure v. La Plata County, supra.*

I think this view is consonant not only with the principle
of justice and fairness that is recognized as the controlling
consideration in all business dealings between individuals,
but will best conserve the interests of the public and better
insure the faithful performance of their official duties on the
part of its fiscal agents.  It is a matter of general knowledge
that prudent and cautious business men not only do, but in
the transaction of their financial affairs are obliged to resort
to the banks of the country as the only depositaries with
whom they can place their money with the assurance that
unless some unforeseen contingency happens, it will be safe
and available when needed.  And why should not a practice
thus universally approved and adopted by business men in
the management of their private affairs, and shown by expe-
rience to be the safest and surest way of protecting large

sums of money from loss, be followed in the handling and administration of the public finances?

The right of a county treasurer to deposit the public money in a bank for safe keeping is tacitly recognized by our statutes and prudence and caution dictate that he should do so, when, as disclosed in this case, the county fails to furnish him a safe place in which to keep it. It would be gross negligence, amounting to recklessness, to keep it on his person, or in his office, unless supplied with adequate and safe means for its preservation. For a loss occurring under such conditions he would be clearly liable. And if, under such circumstances, he exercises the strictest care in selecting a bank of unquestioned solvency in which to deposit the public money, and being guilty of no fault in leaving it there, and the money is lost through the unexpected failure of the depositary, it seems to me unfair, unwise and unjust to hold him and his sureties liable for the money so lost.

As stated by the Chief Justice in the majority opinion, out of the four cases in which this defense has been passed on, in but one—*York County v. Watson, supra*, has it been upheld. Yet, it is also true that in neither of the other three was the decision by a full bench; and in two, there was an express dissent.

A careful reading of these cases convinces me that the weight of authority is not always determined by the numerical preponderance of decisions. Attention is also directed to sec. 3778, Mills' Ann. Stats., as having some bearing upon the question. I cannot see wherein the treasurer's liability is affected by its provisions. If it be true that the county cannot legally collect from the treasurer, or his sureties, moneys lost without his negligence, it follows that to that extent they are "unavailable" within the provision of the statute, and the county is expressly exempted from responsibility therefor.

That the defendant Gartley did exercise that high degree of care and caution exacted of him as a bailee of the public money in the matter of the deposit in question, is shown by

the averments in the special answer. The motion for judgment on the pleadings admits the truth of those averments. In my opinion they constitute a complete defense to the action. I think, therefore, the judgment ought to be reversed upon both grounds.