No. 13,823.

PEOPLE EX REL. BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF JEFFERSON *v.* KOENIG ET AL.

(63 P. [2d] 1235)

Decided November 30, 1936.

Mr. WILLIAM L. BOATRIGHT, Mr. OTTO FRIEDRICHS, for plaintiff in error.

Mr. L. WARD BANNISTER, Mr. SAMUEL M. JANUARY, Mr. THOMAS A. MAPES, for defendants in error.

*En Banc.*

MR. JUSTICE HILLIARD delivered the opinion of the court.

AN action by the people, on relation of the board of county commissioners of the county of Jefferson, to recover from the county treasurer, Koenig, and Fidelity and Deposit Company of Maryland, surety on his official bond, the sum of a balance to the credit of the county with Kountze Brothers, a failed New York banking copartnership, for which the treasurer and surety, disclaiming liability, refused to account. The defendants had judgment at trial.

In all essentials the controversy parallels *Patterson v.*

*People, ex rel.,* 98 Colo. 86, 53 P. (2d) 1187, where our decision was favorable to the county. Here, as there, the county treasurer kept an account with Kountze Brothers from which the depositary paid school district bond obligations made payable there, whenever presented. Here, as there, and for like purpose, a long line of county treasurers had deposited money with Kountze Brothers, and as in Patterson's county (Weld), so here, the board of county commissioners throughout all the years of such custom had knowledge thereof; and here, as there, the account with Kountze Brothers stood in the name of the county. Here, as there, when remitting to Kountze Brothers the treasurer did not make a charge against the several school districts, nor did Kountze Brothers credit it so on receipt. On the contrary, the item was carried on the treasurer's books as a county deposit with Kountze Brothers, and correspondingly on their books. Here, as there, the treasurer did not debit the school districts, with each of which he kept a separate account, until receipt from Kountze Brothers of cancelled district obligations, and Kountze Brothers charged its items of disbursements to the general account of the county, as and when made, and not to the several school districts the coupons on the bonds of which it paid.

It is urged, however, that because, pursuant to section 8366, C. L. 1921, certain school districts of Jefferson county had made their bond coupons payable at the banking house of Kountze Brothers in New York, the treasurer of the county was bound to keep funds on deposit with that institution to meet such obligations as they matured and were presented for payment. We are not of that view. Since there is no express statutory requirements to that end, which is frankly conceded, we think that in no responsible sense can the county treasurer be concerned about the place, the manner, or the fact of payment of school district obligations. Of course, by virtue of his office the county treasurer collects tax levies made by or for the school districts of his county,

and is required to credit each district with collections made for it, but his only further duty is to make disbursement on warrants or orders drawn by school district officers. §§8301, 8302, C. L. 1921. School districts and their boards are solely responsible for the creation of district debts, and the time, manner and place of payment is of their uncontrolled action. They discharge their obligations by means of orders or warrants drawn against funds to their credit in the county treasury. If, through making certain coupons payable at Kountze Brothers in New York and others there or at the county treasury at the option of holders—both conditions obtaining here—uncertainty should arise as to when or in what sum their warrants should be drawn, the county treasurer may not relieve the school districts of their embarrassment by making a general deposit of county funds with some depositary to which the school district creditors may resort for payment of due obligations, as was done here, and escape the consequences should the depositary fail, as eventuated in this instance.

█ But it is contended that the county treasurer had a responsible care for the credit of school districts in his county having obligations payable in the circumstances of the record here, constituting their agent indeed, and, premised so, not only was he legally justified in making the deposit of funds in the New York bank, the failure of which worked discomfiture, but in the interest of the districts was bound to do so. We cannot think that position is sound. Only incidentally, if at all, does a county treasurer know of school district indebtedness and how or where it is to be paid. The credit of such an entity, important of course, as well as the burden of the ways and means of its protection, rests with itself and its board. In whatever view considered, therefore, as we think, when the county treasurer deposited county funds with Kountze Brothers he acted gratuitously, and since loss attended his unauthorized action, the situation is con-

trolled by the Patterson decision and the Colorado cases there cited.

██ ██ We do not regard as sound the view that an exception exists in relation to those school districts which made their coupons payable only at the banking house of Kountze Brothers, and that in forwarding money to it, in the circumstances here, so far as required to meet those particular coupons, the treasurer was justified. For accounting purposes, as we have uniformly held, all money, state, county, school district, and whatever, collected by a county treasurer, as such, belongs to the county. *Patterson v. People ex rel., supra; Cooper v. People,* 28 Colo. 87, 63 Pac. 314, cited in *Bell v. People,* 92 Colo. 585, 22 P. (2d) 857; *McClure v. La Plata County,* 19 Colo. 122, 34 Pac. 763. Here, the sum of the net credits of all the activities for which the treasurer makes collection, as shown by his books, exceeded exhibited vouchers and what he had in hand by the amount sought to be recovered, $1,927.41. He had neither school board warrants nor cancelled coupons to cover the sum, and had not made debits to the accounts of school districts for any part thereof. He was frank to say that the sum involved was the balance of a deposit he carried in the Kountze Brothers institution, which had failed. Considering that by our decisions a county treasurer is held strictly accountable for the public money collected by him, the failure of banks in which he has deposited funds and with whatever faith, constituting no defense (*Gartley v. People,* 24 Colo. 155, 49 Pac. 272; *Gartley v. People,* 28 Colo. 227, 64 Pac. 208; *McClure v. La Plata County, supra*), the treasurer here must be held to bear the burden resulting from the failure of a banking institution which he trusted, and the rule applies to the entire sum. He did not pay coupons with the money sought to be recovered—indeed, as we have seen, he did not even charge it to the school districts. In the circumstances here, section 1, chapter 83, S. L. '27, which requires county treasurers to deposit public funds ''in one or more responsible banks located

in the State of Colorado'' works no change in the doctrine. The treasurer first deposited the money as required by that act, and no loss resulted. The loss came through his withdrawal of funds from a Colorado bank, deposited in his name as treasurer, and the redeposit thereof in like manner in a New York bank, which failed. But were we persuaded to the view that a distinction exists between coupons definitely payable at Kountze Brothers and those payable there or at the county treasury, it would not be helpful to the treasurer here. The total of coupons made payable at the Kountze Brothers bank, and there only, and paid, amounted to $5,134 for the entire period of the inquiry, while the deposits for the same period aggregated over $28,000.

The sole assignment of error, being general only, may be said to be insufficient under our rule 32, as emphasized by counsel for defendants in error, but in view of the public nature and importance of the major question involved, we have elected to proceed under rule 35, which is to the effect that in our discretion we may notice any error appearing of record.

In fairness to those concerned we observe that the judgment of the trial court was given prior to our pronouncement in the Patterson inquiry.

Let the judgment be reversed, the trial court to enter instead the judgment prayed for in the complaint.

MR. CHIEF JUSTICE CAMPBELL, MR. JUSTICE BURKE and MR. JUSTICE YOUNG concur.

MR. JUSTICE BUTLER concurs in part and dissents in part.

MR. JUSTICE BOUCK and MR. JUSTICE HOLLAND dissent.

MR. JUSTICE BUTLER, concurring in part and dissenting in part.

So far as the decision concerns coupons made payable at the office of the county treasurer *or* at the banking

house of Kountze Brothers in New York City, at the option of the holder, I concur therein. So far as it concerns coupons made payable only at the banking house of Kountze Brothers in New York City, I dissent. As to the former, until the coupon holders made their election to receive payment at Kountze Brothers' banking house, and the county treasurer received notice of such election, he should have kept the money in Colorado in readiness to make payment at his office. As to the latter, the case is different. Section 8366, Compiled Laws of 1921, provides that interest on school district bonds is "to be payable at such place or places as shall be fixed by said board and designated in said bonds." Acting under the authority thus conferred upon it, the school board fixed the place of payment, and the only place of payment, of the interest; namely, the banking house of Kountze Brothers in New York City, and designated such place of payment in both the bonds and interest coupons. That amounted to. a warrant directing the county treasurer to pay the interest at the place designated, and it became the duty of the county treasurer to transmit to Kountze Brothers in New York City school district funds to pay the interest coupons when due. Surely, he should not be penalized, for the benefit of the school district, for following the direction of the school board, which, in designating Kountze Brothers' bank as the place of payment, acted under express statutory authority.

MR. JUSTICE BOUCK and MR. JUSTICE HOLLAND concur in this opinion so far as it deals with coupons made payable at the banking house of Kountze Brothers only.

MR. JUSTICE BOUCK, dissenting.

I regret that I must dissent from the judgment and opinion of the court.

Declaring this case to be governed by *Patterson v. People ex rel.*, 98 Colo. 86, 53 P. (2d) 1187, the majority opinion holds the county treasurer of Jefferson county, to-

gether with the surety on his official bond, absolutely liable to that county for the loss of certain deposits of public moneys. These moneys had been deposited in good faith by the treasurer (who was the statutory custodian of all school district funds) in the New York banking house of Kountze Brothers, for the purpose of having paid therefrom such of the interest coupons clipped from the bonds of the various school districts in the county as might be presented for payment at said bank. This bank had for many decades enjoyed an enviable reputation for solvency and soundness, but succumbed to the great financial depression which began in 1929, and was adjudicated a bankrupt in the latter part of 1931. Thus was created the present controversy as to who shall sustain the resulting loss.

A statute the validity whereof is not impugned, regularly enacted by the legislative branch of the state government, and in force when each of the bonds and interest coupons here involved was issued, seems clearly to authorize all that was done by the county treasurer for which he is now penalized by this court. This statute provided that the interest should be ''payable at such place or places as shall be fixed by said board and designated in said bonds.'' C. L. '21, page 2148, §8366. By due action of the respective boards, the bonds of several districts accordingly designated the place by providing that the interest coupons were ''payable at the Banking House of Kountze Brothers, in the City of New York, U. S. A., upon presentation of   *   *   *   said coupons   *   *   *.'' The bonds of other districts designated two places by providing that interest coupons were ''payable at the Office of said County Treasurer or at the Banking House of Kountze Brothers, in the City and State of New York, U. S. A., at the option of the holder, upon presentation of   *   *   *   said coupons   *   *   *   as the same mature.'' The coupons themselves contained corresponding provisions.

These provisions therefore became part of a valid con-

tract between the district and each holder of a bond or coupon. He was entitled to have them carried out according to their plain intent. Whatever was expressly or by necessary implication required to enforce the contract according to its terms was legal and legitimate.

Take, first, the coupons absolutely payable in New York City. (These are the coupons upon which Mr. Justice Butler bases his partial dissent herein. I think that he is right but does not go far enough in his dissent, as I shall later endeavor to show.) When a district said it would *pay* the principal and interest of its bonds, and made the interest *payable* at Kountze Brothers' bank, it of course contemplated *payment* in the ordinary and unambiguous sense of the word. It would not be reasonable to suppose that it meant merely permission to deliver a coupon at the New York bank for future collection. That privilege of the holder is his without any mention of it, and one can readily see that the language of the statute, bonds, and coupons has no reference to such an empty and futile right. *Payment,* however, presupposed the existence of a sufficient fund for the purpose at the very place designated for *payment;* in this instance not in Colorado but 2,000 miles away. In view of the inevitable uncertainty as to the number and aggregate amount of coupons which would be presented during any particular period —matters of which neither the county treasurer, the school district, nor any other person could of course have any definite knowledge—it is obvious that ordinary business prudence and integrity would always supply a sum well in excess of the average of presentations and payments, which, as the record shows, varied greatly. This, to my mind, is exactly what the county treasurer, as a reasonable man, did and had a lawful right and duty to do. If it had been alleged and proved that he had acted recklessly or had been guilty of negligence, there would have been a wholly different issue both at the trial in the district court and now in this court on review. Such, however, is not the case. In the absence of such an issue, the

language used by the school district in its bonds and coupons would have been nullified if the county treasurer had failed to supply ample funds as he did. A promise to pay in New York "upon presentation of * * * said coupons" would then have proved nebulous indeed, a veritable delusion and a snare. If the district may thus default, there seems cruel irony in the bonds themselves: "The faith and credit of said School District No. 50, in the County of Jefferson, are hereby *pledged for the punctual payment of * * * the interest* upon this bond."

The origin and purpose of the statutory provision under examination are not conjectural. It is common knowledge that the provision is traced to the practical business exigencies out of which it arose. Bond issues of public corporations have not infrequently languished unsought and unsold when lacking such a provision. The Illinois courts hold, in the absence of statutory authority for paying bonds or coupons elsewhere than at the regular office of the fiscal officer, that the issuing body cannot lawfully make bonds or coupons payable at some place outside the state. The courts of the other states, however, hold that this may be done even when there is no enabling statute. Hainer, Mod. Law of Mun. Securities, pages 297-8, §248; 6 McQuillin, Mun. Corporations (2d Ed.), page 166, §2451 (2292). In the case at bar we need not rely upon general principles. As stated, provision for payment at some other place is expressly authorized in Colorado by statutes. Such provisions had previously, and have since, been similarly authorized by the statute for insertion in the various kinds of bonds issued by the state of Colorado, by counties, by irrigation districts, and by other bodies corporate. See (as to the state) C. L. '21, §§345, 353, 362, 373; (as to counties) §§8843, 8847, 8858, 8867; (as to irrigation districts) §§1983, 1987; (as to towns and cities) §§9180, 9188. Long continued and uniform procedure on the part of all state, county, district, and other officers gave a positive administrative construction in favor of exactly what the county treasurer

of Jefferson county did. It was no experiment; it was settled business practice.

Thus far I have discussed the coupons which were expressly and unconditionally payable at Kountze Brothers' bank in New York City. I cannot discern, as does Mr. Justice Butler, any difference in principle between such coupons and the coupons payable in the alternative, *either* at the county treasurer's office *or* at Kountze Brothers' New York bank, *at the option of the holder* and without any requirement whereby the holder would have to give previous notice of his election. As to both classes the contract as stated therein and in the bonds themselves is clear. Thereunder it certainly became the duty either of the county treasurer or of the school districts to make provision for actual payment at maturity in either place. In the absence of affirmative action by the districts, the county treasurer did just as the treasurers of the state, of the counties, of irrigation districts, and other public corporations for over half a century had done without protest or objection; he supplied the funds necessary to insure payment according to the solemn promise of the bond-issuing authority. His action, known and acquiesced in by the districts and by the county at all times, should therefore be accepted now as legal and binding upon the districts. The statute obviously called for such action. The statute should be held to protect him in it.

A significant fact is that the school districts are not parties to the present litigation. They are the only real persons in interest, being the owners of the district funds, and yet they are not complaining. This circumstance, I think, should in itself be sufficient to forbid a judgment against the county treasurer. It is a controversy involving fundamental business methods and legal obligations of the districts, not of the county. I fear that the only inference we can now draw from the situation is that, by deciding as the majority opinion does, this court has lost sight not only of the legal liability but of the business aspect involved, which was obviously the sole reason for

enactment of the enabling statute and for inclusion in the bonds and coupons of the provision as to place.

Furthermore, apart from the fact that the county is not the real party in interest because the funds in question are not county funds, I respectfully submit that the majority has overlooked the fundamental principles of interpretation for statutes and contracts. It fails to harmonize the various statutes and the various parts thereof with a view to giving effect to all. It fails to give the treasurer credit for making the initial deposit of the district funds in Colorado banks and thus satisfying the statute in that respect. It permits a drastic penalty to be visited upon the county treasurer at the instance of the county when the school districts were the only persons who could, under the statutes, have been injured, the very ones whose wishes and commands as contained in their express contracts with third persons the county treasurer has faithfully carried out in the only reasonable way.

In my opinion, the Patterson case in 98 Colorado, mentioned at the beginning, is not decisive of the present one. Moreover, I still believe that that case was wrongly decided. However, the two cases, as already indicated, are different in their facts and their presentation, and the case at bar seems to me to call for affirmance of the judgment rendered by the district court in favor of the county treasurer. Because the majority decides in favor of the county, I respectfully dissent.